ACCUTEST CORPORATION, a Massachusetts corporation, Plaintiff,

v.

ACCU TEST SYSTEMS, INC., a Delaware corporation, Defendant.

Civ. A. No. 81–1858–G.

United States District Court, D. Massachusetts.

Jan. 6, 1982.

---

David Wolf, Wolf, Greenfield & Sacks, P.C., Boston, Mass., for plaintiff.

Martin Stein, Phillips, Nizer, Benjamin, Krim & Ballon, George R. Fearon, New York City, for defendant.

### MEMORANDUM AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

GARRITY, District Judge.

Plaintiff, Accutest Corporation, a Massachusetts corporation, brings this suit against defendant Accu Test Systems, Inc., for alleged trademark infringement, unfair competition, false designation of origin, and dilution. In essence, plaintiff claims injury from defendant's use of the name Accu Test (Accutest) in defendant's efforts to raise capital through a public offering of its common stock. Plaintiff claims that it has used Accutest as its name and trademark for some years prior to defendant's use, that plaintiff is engaged in a business requiring substantial capital investment, that plaintiff was contemplating use of the public capital market to raise funds and anticipates a public offering of its stock shortly, and that accordingly, defendant's use of a name which sounds and looks like plaintiff's name will cause confusion and impair plaintiff's ability to proceed. Thus, this case is not a conventional trademark infringement case in which the alleged violation arises from the sale of a product. Here, plaintiff

complains of the alleged appropriation of its name for purposes of defendant's public stock offering.

Defendant has moved to dismiss this action for lack of personal jurisdiction and for improper venue. Defendant claims that it is a Delaware corporation with its principal place of business in Houston, Texas, and that it has done no business in Massachusetts. Upon consideration of the briefs and affidavits the parties have filed, and having heard oral argument of counsel on November 2, 1981, the court grants defendant's motion and dismisses plaintiff's action.

Plaintiff acknowledges in its complaint that defendant is a Delaware corporation with a principal place of business in Houston. Moreover, defendant has asserted, and plaintiff has either admitted in oral argument or not refuted, that defendant (a) is not incorporated in Massachusetts and (b) has no offices, employees, salesmen or phone listing in Massachusetts, (c) sells no product or service in Massachusetts, and (d) neither owns nor leases property in Massachusetts. Plaintiff argues, however, that the court has jurisdiction over defendant's person and that venue is proper here based on the following contacts between defendant and Massachusetts:

(1) Defendant's preliminary prospectus was available in Massachusetts;

(2) An advertisement regarding defendant's offer to sell its stock appeared in the New York Times on August 20, 1981;

(3) Two underwriters of defendant's publicly traded stock have offices in Massachusetts;

(4) Information regarding defendant's stock is available in Massachusetts through computer retrieval systems of at least two national stock firms;

(5) At least one discount stockbroker handles defendant's stock here.

(6) Defendant's stock is available and sold over the counter in Massachusetts. In affidavit defendant states that it instructed its underwriters not to sell stock to anyone in Massachusetts. Defendant concedes that once its stock began to trade publicly it could no longer control sales of its stock so that some may have been sold in Massachusetts.

### I. Personal Jurisdiction[1]

For a court to have personal jurisdiction over a foreign corporation, the court must find both that (a) a local statute authorizes personal jurisdiction in the circumstances of the case and (b) the exercise of such jurisdiction would comport with the due process requirement that a nonresident domiciliary have certain "minimum contacts" with the forum state. *Commonwealth of Puerto Rico v. SS Zoe Colocotroni*, 1 Cir. 1980, 628 F.2d 652, 667, cert. denied, 450 U.S. 912, 101 S.C. 1350, 67 L.Ed.2d 336. Federal courts must, therefore, determine questions of personal jurisdiction according to the laws of the forum state, *United States v. First National City Bank*, 1965, 379 U.S. 378, 381, 85 S.Ct. 528, 530, 13 L.Ed.2d 365, subject to the limits due process imposes.

Plaintiff asserts that personal jurisdiction exists under the two sections of the Massachusetts long-arm statute, Mass.G.L., c. 223A, § 3, set out below:

A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's

(a) transacting any business in this commonwealth;

. . . .

1. In *Leroy v. Great Western United Corp.*, 1979, 443 U.S. 173, 180, 99 S.Ct. 2710, 2714, 61 L.Ed.2d 464, the Supreme Court noted that although courts generally decide questions regarding personal jurisdiction ("which goes to the court's power to exercise control over the parties") prior to those regarding venue ("which is primarily a matter of choosing a convenient forum"), they may reverse that normal order "when there is sound prudential justification for doing so." In *Leroy*, the Court decided the venue issue first to avoid reaching a novel constitutional question regarding personal jurisdiction. However no comparable prudential considerations present themselves here and we follow the usual order.

(c) causing tortious injury by an act or omission in this commonwealth; . . .

The Massachusetts long-arm statute asserts jurisdiction over the person to the extent the Constitution allows. *"Automatic" Sprinkler Corp. of America v. Seneca Foods Corp.*, 1972, 361 Mass. 441, 443, 280 N.E.2d 423. Therefore, the two inquiries necessary in determining whether a court has jurisdiction over the person tend to converge. They do not coincide, however. Even where the statute's language can accommodate the fact pattern presented in support of jurisdiction the court cannot exercise jurisdiction which transcends the constitutional boundaries. And although the relevant facts fall within the constitutional limits, the court cannot assert jurisdiction unless the reach of the long-arm statute embraces those facts. See *Nova Biomedical Corporation v. Moller*, 1 Cir. 1980, 629 F.2d 190, 192; *Good Hope Industries, Inc. v. Ryder Scott Company*, 1979, 378 Mass. 1, 6, 389 N.E.2d 76, 80.

The Supreme Court has held that in order for a court to exercise personal jurisdiction over a nonresident and nonconsenting defendant, the defendant must have "certain minimum contacts" with the forum so that "the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 1945, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, *quoting in part* from *Milliken v. Meyer*, 1940, 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278. Although the "minimum contacts" test relaxed significantly the constitutional requirements for personal jurisdiction, see, e.g., *McGee v. International Life Insurance Co.*, 1957, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223, it did not eliminate them. For under the minimum contacts test, the "essential constitutional question", *SS Zoe Colocotroni, supra* at 668, remains whether there is "some act by which the defendant purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 1958, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283. Foreseeability that a product will enter the forum state is not sufficient to confer personal jurisdiction. For "the foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 1980, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490.

■ Plaintiff first claims that this court has personal jurisdiction over defendants under c. 223A, § 3(a), on the ground that the cause of action arose from defendant's "transacting any business" in Massachusetts. Even accepting that this phrase "should be construed broadly", *Nova Biomedical Corp. v. Moller, supra* at 193–94, and that it covers a range of activities which include but are not limited to commerce, *Ross v. Ross*, 1976, 371 Mass. 439, 441, 358 N.E.2d 437, 439, we fail to discern anything defendant transacted in this commonwealth. As stated above, the usual indicia of contact with a forum—a local office, phone listing or the sale of products—are admittedly lacking. Moreover, plaintiffs do not claim that defendants even sold their stock in Massachusetts, and defendants, by affidavit, state that they directed their underwriters not to do so. Plaintiff thus predicates its argument for personal jurisdiction on the availability of defendant's preliminary prospectus in Massachusetts, the fact that two of defendant's underwriters for its initial sale of stock have local offices, the publication of defendant's "tombstone" advertisement in the *New York Times*, a newspaper circulated and read here, and the fact that defendant's stock has been sold by others in Massachusetts.

These data are plainly too scant to establish that defendant was "transacting any business" here. Indeed, opinions of the Massachusetts Supreme Judicial Court in other cases have found that greater levels of activity did not satisfy the statutory

requisite. In *Droukas v. Divers Training Academy, Inc.*, 1978, 375 Mass. 149, 376 N.E.2d 548, defendant's contacts—an advertisement in a publication distributed in Massachusetts, receipt of a phone call from Massachusetts regarding the purchase of merchandise, the sending of correspondence confirming the sale, and the shipment of the goods to Massachusetts—were insufficient to come within the ambit of § 3(a). Similarly, in *"Automatic" Sprinkler, supra* 361 Mass. at 444, 280 N.E.2d 423, mailings to and from Massachusetts first to form, and then to pay partially for performance of, a contract, were not within § 3(a).[2] Here the contacts are no more substantial. But even if these contacts did fit within the statutory language, they would not satisfy the constitutional requirement. For plaintiff has pointed to no way in which defendants "purposefully avail[ed] itself of the privilege of conducting activities" in Massachusetts. *Hanson v. Denckla, supra* 357 U.S. at 253, 78 S.Ct. at 1239. On the contrary, by instructing its underwriters not to sell stock in Massachusetts, defendant seems to have purposefully sought to avoid activity in this forum.

Plaintiff also argues that this court has jurisdiction over defendant under § 3(c) on the grounds that defendant caused "tortious injury by an act or omission in this commonwealth . . . ." Plaintiff argues that "the distribution of the preliminary prospectus, advertisement of the stock offering in a newspaper distributed in Massachusetts and sale of [defendant's] stock" met that test. Indeed, a body of trademark infringement law holds that the wrong takes place where the passing off occurs, which, plaintiff argues, is Massachusetts in the instances cited above. See *Vanity Fair Mills, Inc.*

*v. T. Eaton Co.*, 2 Cir. 1956, 234 F.2d 633, 639, reh. denied, 352 U.S. 913, 77 S.Ct. 144, 1 L.Ed.2d 120, cert. denied, 352 U.S. 871, 77 S.Ct. 96, 1 L.Ed.2d 76.

In advancing this argument, plaintiff has relied on three cases decided in the Southern District of New York which found personal jurisdiction to exist under a similar provision of the New York long arm statute, *Honda Associates Inc. v. Nozawa Trading, Inc.*, S.D.N.Y., 1974, 374 F.Supp. 886, *Transamerica Corporation v. Transfer Planning, Inc.*, S.D.N.Y., 1976, 419 F.Supp. 1261, and *Metropa Co., Ltd. v. Choi*, S.D.N.Y., 1978, 458 F.Supp. 1052. These cases are, however, distinguishable on their facts. In each, a non-domiciliary corporation had mailed to New York catalogs or brochures to solicit customers or products to fill orders. The contacts were slight—in *Honda Associates* the defendant had sent 20 catalogs to New York in 4 years and received 3 mail orders for goods whose total retail value was $37; in *Metropa* a California defendant had sent two wigs to New York for $28.99. In *Transamerica* defendant sent 100 to 250 brochures to New York addresses soliciting customers and placed an advertisement in the *Wall Street Journal* and in two foreign newspapers available in New York.

In each of these cases, defendants had intentionally solicited customers in, or introduced their product into, the forum. The literature disseminated and products distributed contained the allegedly infringing trademark. The element of intent is significant in satisfying the statutory requisites of § 3(c) and the constitutional requirements. *Murphy v. Erwin-Wasey, Inc.*, 1 Cir. 1972, 460 F.2d 661, 664. Cf. *Centronics Data Computer Corp. v. Mannesmann*, D.

**2.** Two recent decisions interpreting § 3(a) are not inconsistent with the construction we give that provision. In *Nova Biomedical Corporation v. Moller, supra*, the First Circuit held that defendant's sending of two threatening infringement letters to plaintiff in Massachusetts in the factual context present there constituted the transaction of business that § 3(a) requires. The First Circuit explicitly did not hold that the mailings alone would satisfy the statute but that in conjunction with defendant's other contacts with the forum, they did. In *Carlson Corporation v. University of Vermont*, 1980 Mass.Adv.Sh. 659, 662, 380 Mass. 102, ——, 402 N.E.2d 483, the Supreme Judicial Court held that "physically signing a contract in Massachusetts is, in literal terms, transacting business in Massachusetts . . . ." Such an act comports more closely with the · common-sense understanding of that phrase than do the factors upon which plaintiff here relies.

N.H., 1977, 432 F.Supp. 659, 666–68. For having "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws", *Hanson v. Denckla, supra* 357 U.S. at 253, 78 S.Ct. at 1239, a defendant should reasonably anticipate the possibility of being called upon to defend a lawsuit there, *World-Wide Volkswagen Corp. v. Woodson, supra.*

The contacts which plaintiff cites in this case do not suggest that defendant purposefully entered the state so that it might expect fairly to be held accountable in a Massachusetts court. Defendant conducts no activities here. Although others may sell defendant's stock here, plaintiff offers no proof that defendant has sold or even sought to sell, any stock in Massachusetts, and defendant offers evidence that it ordered that its stock not be sold here. nor do we believe that a single ad in the *New York Times*, without more, can come within the statutory or constitutional requirements. Courts have mentioned advertisements in foreign publications in decisions regarding personal jurisdiction, but usually only when other contacts suggest a purpose to act within the state. See, e.g., *Transamerica Corp. v. Transfer Planning, Inc., supra; Honda Associates, Inc. v. Nozawa Trading, Inc., supra; Droukas v. Divers Training Academy, Inc., supra.* Here the only other purported contact, the alleged availability of the prospectus in Massachusetts, is *de minimis*, especially absent any allegation that defendants made efforts to expose it to a local audience. It may have been foreseeable that the ad would be seen in Massachusetts, as well as in every other state and nation where the *New York Times* is read. But that is insufficient to confer jurisdiction absent evidence of some purposive activity in the Commonwealth.

In sum, defendant's relationship with Massachusetts can better be described as "no contact" than as minimum contacts. Finding no ways in which defendant "purposefully avail[ed] itself of the privilege of conducting activities" in Massachusetts, we grant defendant's motion to dismiss for lack of personal jurisdiction.

## II. *Venue*

■ Defendant has also moved to dismiss this action for improper venue. The relevant venue statutes for this case are 28 U.S.C. § 1391(b) and 1391(c), as set forth below:

(b) A civil action wherein jurisdiction is not founded solely on diversity of citizenship may be brought only in the judicial district where all defendants reside, or in which the claim arose, except as otherwise provided by law.

(c) A corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes.

The Supreme Court has not decided the extent to which, and we do not assume that, personal jurisdiction and venue are coextensive concepts. Rather, upon an inquiry separate from our decision on personal jurisdiction, we conclude that improper venue constitutes an independent ground for dismissing this action since neither § 1391(b) nor § 1391(c) provides a basis for venue in this district.

For purposes of this case, the relevant language of § 1391(b) is "the judicial district . . . in which the claim arose." In modern social and commercial life, the deeds of an actor in one location may cause injury in numerous places. The courts have made clear that the fact that an injury is felt or occurs in a particular place does not mean that, for venue purposes, the claim arose there. Although the Supreme Court has not decided whether under § 1391(b) a claim may arise only in one district, it has set some limits on that clause. In *Leroy v. Great Western Corp., supra,* 443 U.S. at 185, 99 S.Ct. at 2717, the Court found that Congress, in enacting § 1391(b), did not intend to give plaintiff "an unfettered choice among a host of different districts", stating that "the broadest interpretation of the language of § 1391(b) that is even arguably acceptable is that in the unusual case in which it is not clear that the claim arose in

only one specific district ... a plaintiff may choose between those two (or conceivably even more) districts that with approximately equal plausibility—in terms of the availability of witnesses, the accessibility of other relevant evidence, and the convenience of the defendant (but *not* of the plaintiff)—may be assigned as the locus of the claim." *Leroy* makes clear then that while a claim might in an "unusual" case "arguably" arise in more than one district, it cannot arise where the relationship between the claim and the forum is as attenuated as it is here. The factors *Leroy* identifies as relevant to this inquiry—the availability of witnesses and evidence, the convenience of the defendants—do not point to this district as the locus of the claim. The district where evidence and witnesses would be most available would probably be where defendant sold most stock and where its "tombstone" and prospectus had their widest circulation. Defendant's motion to dismiss, coupled with the inferences we draw from defendant's absence of contacts with Massachusetts, indicate that this district is not a convenient one.

The conclusion we reach is consistent with the leading cases, cited by both parties, deciding where the claim arose in the trademark infringement context. In *Honda Associates, Metropa,* and *Transamerica,* the facts of which are described above, courts in the Southern District of New York applied a modified "weight of the contacts" approach and held that the claim of trademark infringement did not, for purposes of venue, arise in a district with which the defendant had had only miniscule contact. The contacts here are miniscule at the most.[3] The contacts plaintiff alleges— the *New York Times* ad, the sale of stock by public purchasers, the presence of an underwriter—are plainly too insubstantial to make this district the locus of the claim, especially in light of the more constricted approach that *Leroy* endorses.

Nor is defendant "doing business" in this district under § 1391(c).[4] The meaning of § 1391 "is a federal question whose answer depends on federal law." *Leroy v. Great Western United Corp., supra* at 183 n. 15, 99 S.Ct. at 2716 n. 15. Thus, whether defendant is "doing business" in Massachusetts does not depend on the forum state's statutory standards for personal jurisdiction but rather on a federal standard. The content of that standard is unclear. Some cases have equated "doing business" with "minimum contacts". See, e.g., *Galonis v. National Broadcasting Co., Inc.,* D.N.H., 1980, 498 F.Supp. 789; *Westphal v. Stone Manufacturing Co.,* D.R.I., 1969, 305 F.Supp. 1187. Others have held that "doing business" requires a closer relationship than minimum contacts, see, e.g., *Honda Associates, Inc. v. Nozawa Trading, Inc., supra;* they have occasionally applied a "uniform federal standard" of whether the corporation's activities are sufficiently localized in the district such that *some* state would require it to procure a license. See, e.g., *Lubrizol Corporation v. Neville Chemical Company,* N.D.Ohio, 1978, 463 F.Supp. 33; *Trinity Metals v. Andy International, Inc.,* E.D.Pa., 1977, 424 F.Supp. 966. We need not choose between those standards to resolve this case. Both tests require a fact-sensitive inquiry oriented to similar factors—the general character of the corporation, the nature and scope of its business operations, the extent and continuity of authorized corporate conduct within the forum, and their contacts with the forum. See *Galonis v. National Broadcasting Co.,*

---

**3.** Two decisions plaintiff cites, *Hershey Foods Corp. v. Harry London's Candies, Inc.,* M.D.Pa., 1978, 203 U.S.P.Q. 1078, and *Technical Publishing Co. v. Mayne,* N.D.Ill., 1979, 206 U.S.P.Q. 284, are not dispositive of this case. Both involved far more substantial levels of activity than the case before us. Moreover, both were decided before *Leroy* and it is not clear that the broader interpretation they give § 1391(b) would survive *Leroy*.

**4.** In considering whether defendant is "doing business" in this district under § 1391(c), we also are, in effect, determining whether it "resides" here under § 1391(b). Since we have held that the claim did not arise here, and since defendant is neither incorporated nor licensed in Massachusetts, venue would be proper under §§ 1391(b) and 1391(c) only if defendant is "doing business" here.

*Inc., supra* at 791–92. Under either test, defendant clearly is not doing business here. It has no offices, employees or phone listings here. Nor does the record suggest that it sends employees, agents, or literature into the state on a regular, or even irregular basis, to solicit business. Rather, the total corporate activity the record discloses is that (a) defendant contracted with underwriters with local offices, (b) defendant's advertisement in a newspaper reached the state, and (c) information regarding defendant was available here. There is no evidence that defendant sold its stock continuously or, for that matter, at all here. Defendant's contacts with this district, to the extent the things plaintiff describes represent contacts at all, are simply too casual to constitute doing business.

Accordingly, we find, in the alternative, that the claim did not arise in this district and defendant is not doing business here; thus venue is improper here, and we dismiss the action for lack of venue as well as for lack of personal jurisdiction.