**GERMAN EDUCATIONAL TELEVISION NETWORK, LTD., Plaintiff,**

v.

**OREGON PUBLIC BROADCASTING CO., and Thomas Doggett, Defendants.**

No. 83 Civ. 5006–CSH.

United States District Court, S.D. New York.

Sept. 8, 1983.

Robson, Miller & Osserman, New York City, for plaintiff; Thomas E. Hommel, New York City, of counsel.

Bender & Frankel, Sandor Frankel, New York City, for defendant Oregon; Dave Frohnmayer, Atty. Gen. of State of Or., William F. Gary, Deputy Atty. Gen. of State of Or., Frank W. Ostrander, Jr., Asst. Atty. Gen., of State of Or., Portland, Or., of counsel.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

In this action for trademark infringement and unfair competition, plaintiff moves for a preliminary injunction. Defendant cross moves to dismiss plaintiff's complaint upon several grounds, or in the alternative to transfer venue to the District of Oregon. Having considered the briefs and affidavits, I find it necessary to discuss only defendant's contentions of lack of personal jurisdiction and improper venue. For the reasons which follow, the action will be transferred to the District of Oregon.

Plaintiff German Educational Television Network, Ltd. ("GETN") alleges in its complaint that it is a not-for-profit corporation organized under the laws of the District of Columbia, qualified to do business in the State of New York, and with a principal office within this District. GETN is engaged in the business of producing and distributing television productions and pro-

grams, among them a television program entitled "Soccer Made In Germany." GETN has produced "Soccer Made In Germany" since May, 1977. The program consists of a series of one hour taped excerpts of soccer games made between teams in various European soccer leagues. "Soccer Made In Germany," the complaint alleges, has aired on Public Television stations throughout the United States without interruption 52 weeks every year since its inception.

Defendant Oregon Public Broadcasting Co. ("OPB") is alleged by the complaint to be a corporation organized and existing under the laws of the State of Oregon.[1] The complaint charges OPB with submitting a program proposal to public television stations, offering for sale a program called "Soccer From Germany." GETN alleges that this program infringes its trademark interest in "Soccer Made In Germany," and also constitutes unfair competition. Subject matter jurisdiction is founded upon the Lanham Act, 15 U.S.C. § 1114 *et seq.* and upon diversity of citizenship, 28 U.S.C. § 1332.

OPB moves, *inter alia,* to dismiss the complaint on the grounds of lack of personal jurisdiction and improper venue.[2] Following the usual order, *Accutest Corp. v. Accu Test Systems, Inc.,* 532 F.Supp. 416, 418 n. 1 (D.Mass.1982), I shall deal first with personal jurisdiction, and then with venue.

## I.

*Personal Jurisdiction*

It is uncontroverted that the only offices of OPB are located in Oregon. There is no evidence that OPB employees or representatives have ventured into New York for the purpose of doing business there, either in connection with the program in suit or for any other purpose. There is no evidence of any presence of any kind of OPB within the State of New York.

Notwithstanding these negative factors, GETN contends that personal jurisdiction over OPB is conferred by the New York long-arm statute appearing in CPLR § 302. Specifically, GETN relies upon § 302(a)(2), which provides:

"Acts which are the basis of jurisdiction. As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nondomiciliary, or his executor or administrator, who in person or through an agent: ...

"2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; ...."

The tortious act said to be committed by OPB in New York is the "passing off" within this District of program proposals that infringe upon GETN's trademark, and constitute unfair competition with GETN.

This contention is based upon the manner in which OPB disseminates its programming proposals to public broadcasting stations. The Public Broadcasting Service ("PBS") is headquartered in Washington, D.C. PBS operates an annual "marketplace" for programming among public broadcasting stations. This annual marketplace is called the Station Program Cooperative ("SPC"). The SPC solicits program proposals from member stations, and forwards a compilation of those proposals to all member stations, which then decide whether or not to purchase them. In the event of a decision by a member station to purchase, PBS then contracts with a producing station or other entity for production of the selected programming, PBS emerging at that point as the actual owner of the programming. This is one route through which producers of programming may seek to market their programs. Another route is by use of the Direct Access Satellite Communications System ("DACS"), by which messages can be sent

---

1. Defendant avers in its motion papers that its correct name is "The Oregon Committee on Public Broadcasting." GETN does not appear to quarrel with that.

2. OPB also contends that it is an agency of the State of Oregon and thus immune to federal suit under the Eleventh Amendment to the United States Constitution; and that there is an insufficiency of service of process.

directly to each public broadcasting station offering a program for sale.

OPB has utilized both procedures in seeking to market the programs in suit. In August, 1982, OPB submitted a proposal form to SPC for its soccer show, to run in the beginning of the fall of 1983 and continuing through the winter of 1984. Also, in July, 1983 OPB sent a DACS message to all stations offering another soccer program.

■ In evaluating a claim of personal jurisdiction based upon a state's long-arm statute, two questions arise. The first is whether a proper construction of the statute operates to confer jurisdiction over the defendant. The second is whether, if such jurisdiction is conferred by the statute, it would offend notions of constitutional due process. *Mayes v. Leipziger,* 674 F.2d 178, 185 n. 5 (2d Cir.1982). These are separate inquiries. "Even where the statute's language can accommodate the fact pattern presented in support of jurisdiction the court cannot exercise jurisdiction which transcends the constitutional boundaries. And although the relevant facts fall within the constitutional limits, the court cannot assert jurisdiction unless the reach of the long-arm statute embraces those facts." *Accutest Corp. v. Accu Test Systems, Inc., supra,* at 419.

■ It is established law in this Circuit that the offering for sale within New York State of allegedly infringing products confers jurisdiction upon this Court under § 302(a)(2). *Transamerica Corp. v. Transfer Planning, Inc.,* 419 F.Supp. 1261 (S.D.N.Y.1976); *Honda Associates, Inc. v. Nozawa Trading, Inc.,* 374 F.Supp. 886 (S.D.N.Y. 1974); *R.F.D. Group Ltd. and RFD–GQ Ltd. v. Rubber Fabricators Inc.,* 323 F.Supp. 521 (S.D.N.Y.1971). That is because in cases of trademark infringement, "the wrong takes place not where the deceptive labels are affixed to the goods or where the goods are wrapped in the misleading packages, but where the passing off occurs...." *Vanity Fair Mills, Inc. v. T. Eaton Co.,* 234 F.2d 633, 639 (2d Cir.1956), *cert. denied,* 352 U.S. 871, 77 S.Ct. 96, 1

L.Ed.2d 76, *rehearing denied,* 352 U.S. 913, 77 S.Ct. 144, 1 L.Ed.2d 120 (1956). The offering of infringing goods for sale within the state constitutes a tortious act under § 302(a)(2), even without actual resulting sales. *Honda Associates, Inc., supra,* 374 F.Supp. at 889.

■ OPB argues that these cases are distinguishable because it did not mail materials offering the programs for sale directly to potential New York purchasers, or send employees into New York for the purpose of such solicitation. Instead, as previously noted, OPB submitted its proposals through the SPC and by beaming them to the satellite DACS. There is in my view no substance to this contention. OPB took advantage of the two basic marketing tools recognized by the public broadcasting industry. OPB both intended and foresaw that the SPC machinery would disseminate its proposals to significant public broadcasting outlets within New York State. As for the use of DACS, OPB's sales message was bounced directly off the satellite into the facilities of all public broadcasting stations, including those significant stations in New York. DACS would appear to be the Star Wars equivalent of the United States Postal Service.

In *Transamerica Corp., supra,* Judge Lasker considered it pertinent to § 302(a)(2) personal jurisdiction that the defendant, in addition to mailing material to addressees in New York State, placed advertisements abroad in foreign newspapers which were available for purchase at newsstands in New York City. It was proper for the judge to give consideration to such factors, since to do so recognized the practical realities of the case. By the same token, OPB placed into motion accepted industry procedures which had the practical effect of offering allegedly infringing products for sale in New York. In consequence, the passing off, if such there was, occurred in New York; and that is sufficient to sustain personal jurisdiction under § 302(a)(2).[3]

---

3. OPB's reliance upon *Mayes v. Leipziger, supra,* is misplaced. That suit, for legal malpractice, turned solely upon personal jurisdiction under CPLR § 302(a)(1).

I am not persuaded that there is a constitutional, due process impediment to the assertion of personal jurisdiction over OPB in the circumstances of this case.

Accordingly OPB's motion to dismiss based upon lack of personal jurisdiction fails.

## II.

*Venue*

■ OPB also asserts that venue is improper in this District. As the cases cited under the preceding Point demonstrate, improper venue constitutes an independent ground for dismissing an action. That is to say, personal jurisdiction over the defendant may be present, but the defendant may still be in a position to argue that venue is improper.

■ In the case at bar, I conclude that venue is improper under the authority of *Leroy v. Great Western United Corp.,* 443 U.S. 173, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979).

The parties agree that the venue statute applicable to this case is found at 28 U.S.C. § 1391(b), which reads:

"A civil action wherein jurisdiction is not founded solely on diversity of citizenship may be brought only in the judicial district where all defendants reside, or in which the claim arose, except as otherwise provided by law."

Since OPB does not reside in this District, the question is whether it may fairly be said that this District is one "in which the claim arose."

In *Leroy,* the Supreme Court had occasion to carefully consider the statutory provision allowing venue in "the judicial district ... in which the claim arose." The Court emphasized that in most instances, "the purpose of statutorily specified venue is to protect the *defendant* against the risk that a plaintiff will select an unfair or inconvenient place of trial." 443 U.S. at 183–84, 99 S.Ct. at 2716–17 (emphasis in original). The alternative basis for venue in § 1391(b), the district "in which the claim arose," was intended by the Congress to close the "venue gaps that existed under

earlier versions of the statute in situations in which joint tort feasors, or other multiple defendants who contributed to a single injurious act, could not be sued jointly because they resided in different districts." *Id.* at 184 n. 17, 99 S.Ct. at 2717 n. 17. No such factors are present in the case at bar; and the Court in *Leroy,* discussing the amendment to the statute which created the alternative basis for venue, observed "it is absolutely clear that Congress did not intend to provide for venue at the residence of the plaintiff or to give that party an unfettered choice among a host of different districts." *Id.* at 185, 99 S.Ct. at 2717. Continuing, the Court stated in *Leroy:*

"Rather, it restricted venue either to the residence of the defendants or to 'a place which may be more convenient to the litigants'—i.e., both of them—'or to the witnesses who are to testify in the case.' S.Rep. No. 1752, 89th Cong., 2d Sess., 3 (1966). See *Denver & R.G.W.R. Co., supra* [387 U.S. 556] at 560 [87 S.Ct. 1746 at 1748, 18 L.Ed.2d 954]. See also *Brunette Machine Works v. Kockum Industries,* 406 U.S. 706, 710 [92 S.Ct. 1936, 1939, 32 L.Ed.2d 428]. In our view, therefore, the broadest interpretation of the language of § 1391(b) that is even arguably acceptable is that in the unusual case in which it is not clear that the claim arose in only one specific district, a plaintiff may choose between those two (or conceivably even more) districts that with approximately equal plausibility—in terms of the availability of witnesses, the accessibility of other relevant evidence, and the convenience of the defendant (but *not* of the plaintiff)—may be assigned as the locus of the claim. Cf. *Braden v. 30th Judicial Circuit Court of Ky.,* 410 U.S. 484, 493–494 [93 S.Ct. 1123, 1128–1129, 35 L.Ed.2d 443]." *Ibid.* (footnote omitted) (emphasis in original).

In the light of these criteria, it is clear that this District constitutes an improper venue for the case at bar. It appears from the motion papers that no witnesses for either side reside in New York. All defendant's witnesses reside in Oregon. That is where defendant's documentary evidence is

kept. Obviously it would be more convenient for defendant to defend the action in Oregon than to do so here. Requiring an Oregon agency to conduct its defense in New York constitutes an obvious hardship. No factors of trial convenience would be served by litigation here.

There is an additional factor. As noted, OPB asserts that it is an agency of the State of Oregon, and hence immune from suit under the Eleventh Amendment. OPB bases that assertion upon various provisions in the Oregon statutes. GETN disputes OPB's interpretation of the Oregon statutes, and argues that in any event, OPB has by its conduct waived the applicability of the Eleventh Amendment. Resolution of these issues turns, in part, upon the proper construction of the Oregon statutes. That is an issue more appropriately addressed by the federal court sitting in Oregon. Cf. *District No. 1, Pacific Coast District M.E. B.A. v. State of Alaska,* 682 F.2d 797, 798–99 (9th Cir.1982), citing *Leroy, supra.*

Prior to the Supreme Court's decision in *Leroy,* judges in this District had developed a "weight of contacts" test in applying § 1391(b) venue to trademark infringement cases. Judge Conner developed this approach in *Honda Associates Inc., supra;* Judge Lasker adopted it in *Seabrook Foods v. Seabrook Bros. & Sons, Inc.,* 495 F.Supp. 792 (S.D.N.Y.1980), and *Windsor Industries, Inc. v. U.S. Diamond Imports,* 549 F.Supp. 415 (S.D.N.Y.1982). In those cases, venue in this District was found to be improper and the cases were transferred. In the case at bar, GETN argues that the commercial significance of the public broadcasting stations in New York is sufficient to tip the "weight of contacts" in favor of venue here. But *Honda Associates* preceded the decision by the Supreme Court in *Leroy,* and Judge Lasker's more recent cases do not refer to it. In my judgment, *Leroy* is now the controlling authority in respect of § 1391(b) venue; and, for the reasons stated, venue in this District is improper under the principles therein articulated.

## CONCLUSION

In a case where personal jurisdiction is present but the venue is improper, I regard it as the better course to refrain from dismissing the complaint, but rather transfer it to the court of proper venue.

Plaintiff's motion for a preliminary injunction is denied without prejudice.[4] Defendant's motion to dismiss for lack of personal jurisdiction is denied. The motion for transfer of venue is granted. The Clerk of the Court is directed to forward the file in this matter to the Clerk of the United States District Court for the District of Oregon.

It is So Ordered.

---

4. Nothing in this opinion is intended to intimate any view of this Court as to the merits of the controversy.

Subsequent to OPB's motion to dismiss on the basis of insufficiency of process, GETN undertook to serve an additional summons and amended complaint on OPB and two of its officers in Oregon. There is no need for me to consider whether the original service was sufficient, or if it was not, whether the defect has been cured. Sufficient service would not cure improper venue.