**TONKA CORPORATION, Plaintiff,**

v.

**TMS ENTERTAINMENT, INC., Defendant.**

Civ. No. 4–84–1015.

United States District Court, D. Minnesota, Fourth Division.

May 20, 1985.

D. Randall King, Michael L. Mau, Merchant, Gould, Smith, Edell, Welter & Schmidt, St. Paul, Mn., for plaintiff.

Gary J. Gordon, Julie A. Williams, Cragg, Bailly, Gordon & McCollum, Ltd., Minneapolis, Mn., for defendant.

## MEMORANDUM AND ORDER

MacLAUGHLIN, District Judge.

This matter is before the Court on defendants motion to dismiss for lack of personal jurisdiction and improper venue; or in the alternative to transfer this case to the United States District Court for the Central District of California. The Court will transfer this case to the Central District of California.

## FACTS

Plaintiff Tonka Corporation is a Minnesota corporation which has Spring Park, Minnesota as its principal place of business. Plaintiff manufactures children's toys, and is famous for its Tonka trucks. Plaintiff's most recent creations are robot characters that convert to vehicles. Plaintiff manufactures and markets these toys under the trademark "GOBOTS" and "GOBOTS

MIGHTY ROBOTS MIGHTY VEHICLES" (hereafter GOBOTS). Plaintiff introduced its GOBOTS in September of 1983 and began selling the GOBOTS in December of 1983. Since introducing GOBOTS, plaintiff states that it has spent millions of dollars advertising the GOBOTS trademark, including the production and syndication of a television show based on the robot characters. GOBOTS have been a phenomenal success.

Defendant TMS Entertainment, Inc. is a California corporation with its principal place of business in Los Angeles, California. Defendant's business consists of the production and selling of children's television shows. The television show in controversy is defendant's program "MIGHTY ORBOTS." Defendant has also filed for 14 separate trademark applications in the United States Patent and Trademark Office for MIGHTY ORBOTS trademarks on a variety of products.

Plaintiff asserts that defendant's activities involving MIGHTY ORBOTS constitute false designation of origin, trademark infringement, unfair competition, and deceptive trade practices with respect to plaintiff's GOBOTS.

Prior to September, 1984, defendant began negotiating with the American Broadcasting Company (ABC) regarding the licensing of defendant's television show MIGHTY ORBOTS. The negotiations between defendant and ABC took place in Los Angeles and New York. Defendant and ABC did eventually reach an agreement and subsequently ABC made the program MIGHTY ORBOTS available to its local affiliates nationwide. The local ABC affiliate in the Twin Cities area, KSTP Channel 5, began airing MIGHTY ORBOTS on Saturday morning, September 8, 1984. As of February 15, 1985, KSTP had aired MIGHTY ORBOTS for 23 consecutive Saturday mornings.[1] The average viewing audience for each broadcast of MIGHTY ORBOTS during this period, according to

1. KSTP currently is still airing MIGHTY ORBOTS each Saturday morning. The affidavit of

the KSTP official, however, is dated February 15, 1985.

plaintiff, has been 30,333 households. (Plaintiff bases its calculation on Arbitron ratings of viewership.) Plaintiff reasons that each household viewing MIGHTY ORBOTS constitutes one separate trademark infringement in Minnesota. Thus, plaintiff concludes that defendant has infringed plaintiff's trademark on 697,659 separate occasions from September 8, 1984 until February 15, 1985. Plaintiff also states that each broadcast of MIGHTY ORBOTS is accompanied by advertising and television listings for the program.

Aside from the broadcasting of its program MIGHTY ORBOTS, defendant has no other contacts with the State of Minnesota. According to the affidavit of defendant's executive vice president, defendant has no offices, employees, or bank accounts in Minnesota. Further, defendant does not advertise or solicit business in Minnesota. Finally, no part of the creation or production of MIGHTY ORBOTS took place in Minnesota, and neither did any of the negotiations between defendant and ABC take place in Minnesota. After plaintiff commenced this lawsuit, officers of defendant did make one trip to Minnesota for settlement negotiations. Aside from settlement negotiations and the airing of MIGHTY ORBOTS on Minnesota televisions, defendant has no contacts with Minnesota.

## DISCUSSION

### Personal Jurisdiction

■ Analyzing the issue of personal jurisdiction is generally a two step process. First, the Court must determine whether the facts satisfy the applicable state long arm statute. Second, the Court must determine whether the exercise of personal jurisdiction is consistent with the requirements of due process. *E.g., Scullin Steel Company v. National Railway Utilization Corp.,* 676 F.2d 309, 312 (8th Cir. 1982).

Plaintiff asserts that it has satisfied two Minnesota long arm statutes: Minn.Stat. §§ 303.13 and 543.19. Under Minn.Stat.

§ 303.13, subd. 1(3), a foreign corporation is subject to service of process if it "commits a tort in whole or in part in Minnesota against a resident of Minnesota...." Similarly, Minn.Stat. § 543.19, subd. 1(c) states that personal jurisdiction exists over a foreign corporation if it "[c]ommits any act in Minnesota causing injury or property damage...." Both parties point out that the Minnesota long arm statutes intend to extend jurisdiction over foreign corporations to the maximum extent consistent with due process. *E.g., Land-O-Nod Co. v. Bassett Furniture Industries,* 708 F.2d 1338, 1340 (8th Cir.1983); *Vikse v. Flaby,* 316 N.W.2d 276, 281 (Minn.1982).

Both parties also agree that in trademark infringement cases, the alleged wrong takes place where the "passing off" occurs, *i.e.,* where customer buys a product from one company in the mistaken belief that the product was that of another company. *Vanity Fair Mills, Inc. v. T. Eaton Co.,* 234 F.2d 633, 639 (2d Cir.), *cert. denied,* 352 U.S. 871, 77 S.Ct. 96, 1 L.Ed.2d 76 (1956). Applying the concept to the case at bar, the parties are again in accord that the alleged passing off occurs wherever viewers watch the program MIGHTY ORBOTS. Thus, the passing off takes place throughout the country, including Minnesota. Plaintiff further states that the occurrences of trademark infringement taking place in Minnesota are torts. *Citing* 1 J. Gilson, *Trademark Protection and Practice* § 1.04 (1984); *see also Honda Associates, Inc. v. Nozawa Trading, Inc.,* 374 F.Supp. 886, 888 (S.D.N.Y.1974). Plaintiff also alleges in its complaint that the broadcasts of defendant's program in Minnesota constitute unfair competition and deceptive trade practices, both torts. Plaintiff concludes that because defendant has committed tortious acts in Minnesota, the Minnesota long arm statute provides for jurisdiction over defendant.[2]

■ Although defendant does mention the Minnesota long arm statutes, defend-

---

**2.** Plaintiff also states that because of the broadcasts of MIGHTY ORBOTS, defendant is transacting business in Minnesota and is thus subject to the jurisdiction of a court sitting in Minnesota under Minn.Stat. § 543.19, subd. 1(b).

ant does not argue that plaintiff has failed to meet the requirements of those statutes. Instead, defendant argues that the Court requiring defendant to defend a lawsuit in Minnesota would violate due process. In order for a court to constitutionally exercise personal jurisdiction over a non-resident defendant, defendant must have sufficient contacts with the forum state so that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (citation omitted). In *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958), the Supreme Court observed that there must be "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." In a recent major pronouncement on jurisdiction, the Supreme Court held that the defendant's connection with the forum state must be "such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). The party seeking to invoke the jurisdiction of a federal court bears the burden of establishing that jurisdiction exists once jurisdiction has been challenged. *Scullin Steel Company,* 676 F.2d at 311 (8th Cir.1982).

The United States Court of Appeals for the Eighth Circuit has delineated five factors for courts to consider in evaluating the issue of personal jurisdiction:

(1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts with the forum state; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties.

*Land-O-Nod,* 708 F.2d at 1340. Factors four and five are of secondary importance. *Land-O-Nod,* 708 F.2d at 1340. The major focus of the inquiry "is 'the relationship among the defendant, the forum, and the litigation.'" *Land-O-Nod,* 708 F.2d at 1340, *quoting Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 2579, 53 L.Ed.2d 683 (1977).

Defendant argues that it does not have sufficient contacts with Minnesota to justify a court sitting in Minnesota to assert personal jurisdiction over it. Defendant points out that it does not have a license to do business in Minnesota, nor does it transact business here. Neither does defendant advertise in or solicit business from Minnesota. Defendant does not have any bank accounts in Minnesota. Except for an attempt to settle this case, defendant has never sent any of its employees to Minnesota. Defendant concludes that the only conceivable contact it has with Minnesota is the broadcasting of MIGHTY ORBOTS by local ABC affiliates.

Plaintiff attempts to dramatize the extent of defendant's contacts by calculating the number of Minnesota viewers who have seen MIGHTY ORBOTS, *i.e.,* approximately 700,000 as of February 15, 1985. Plaintiff also claims that defendant has additional contacts with Minnesota because defendant has attempted to gain trademark rights in Minnesota. Plaintiff's claim is somewhat misleading, however, because defendant has applied for 14 separate trademarks from the United States Patent and Trademark Office. National trademarks, of course, include trademark rights in Minnesota.

Plaintiff reasons that these contacts defendant has with Minnesota are more than sufficient for personal jurisdiction. Plaintiff points to *Electro-Craft Corp. v. Maxwell Electronics Corp.,* 417 F.2d 365 (8th Cir.1969) to support the proposition that defendant TMS' non-contacts with Minnesota do not dictate a conclusion that personal jurisdiction does not exist. In *Electro-Craft,* the defendant did not have any employees or offices in Minnesota. Neither did the defendant ever advertise directly in Minnesota. Still, the court concluded that personal jurisdiction was appropriate. What plaintiff Tonka fails to men-

tion, however, was that the defendant in *Electro-Craft* was directly doing business with a Minnesota corporation. The defendant's purposefully dealing with a Minnesota resident was important in the court's rationale. *See Electro-Craft,* 417 F.2d at 369. By contrast, TMS has never dealt directly with any Minnesota resident. TMS reached an agreement with ABC, which in turn dealt with local affiliates in arranging the broadcasts of MIGHTY ORBOTS.

Plaintiff does, however, cite two cases which support plaintiff's argument that a defendant's broadcast in a state can in itself be a contact sufficient to subject the defendant to personal jurisdiction. In *United Medical Laboratories v. Columbia Broadcasting Systems, Inc.,* 256 F.Supp. 570 (D.Ore.1966), the court concluded that it had personal jurisdiction over Walter Cronkite and others. The case involved an alleged defamation to an Oregon plaintiff. Defendant Cronkite had no contacts with Oregon, but the court reasoned that because he produced the broadcast and because he knew it would air in Oregon, Cronkite had sufficient contacts with Oregon. *United Medical Laboratories,* 256 F.Supp. at 572. Similarly, an Arizona court asserted personal jurisdiction over Ed Sullivan in *Pegler v. Sullivan,* 6 Ariz. 338, 432 P.2d 593 (App.1967). Sullivan produced a program which allegedly constituted an invasion of privacy against Arizona residents. Sullivan had no contacts with Arizona, but the court assumed Sullivan knew that the broadcast would be televised in Arizona. *Pegler,* 432 P.2d at 596–97.

■ An important factor in both of these cases, although not explicitly recognized in *United Medical Laboratories,* is that the defendant's one contact with the forum state was precisely the conduct giving rise to the litigation. The fact that a defendant's contacts with a forum state are the activities which give rise to a plaintiff's cause of action is an important consideration supporting a finding of personal juris-

diction. *Land-O-Nod,* 708 F.2d at 1341; *see also Shaffer,* 433 U.S. at 216, 97 S.Ct. at 2586.

*Land-O-Nod* itself provides a good illustration of the importance of the relationship of the cause of action to the defendant's forum contacts. The defendants in *Land-O-Nod* had no employees, offices, or bank accounts in Minnesota. The defendants would send representatives to Minnesota to call on Minnesota retailers. One retailer, with two stores in Minnesota, sold defendants' mattresses and box springs in Minnesota. Defendants had $150,000 in sales in Minnesota in one year. The controversy in *Land-O-Nod* involved a Minnesota corporation which claimed that defendants infringed on plaintiff's trademark for certain mattresses and box springs. Defendants, however, did not sell the allegedly infringing mattresses in Minnesota. The lack of relationship between the defendants' contacts with Minnesota and plaintiff's lawsuit played a central role in the court's concluding that no personal jurisdiction existed. *See Land-O-Nod,* 708 F.2d at 1343.[3]

■ In the present case, defendant TMS' only contact with Minnesota is precisely the conduct upon which plaintiff bases its cause of action. *Land-O-Nod* itself indicates that personal jurisdiction exists in states where an alleged trademark infringement takes place. *See Land-O-Nod,* 708 F.2d at 1343; *see also Transamerica Corp. v. Transfer Planning, Inc.,* 419 F.Supp. 1261, 1262–63 (S.D.N.Y.1976). In fact, in *German Educ. Tel. v. Oregon Public Broadcasting,* 569 F.Supp. 1529, 1532–33 (S.D.N.Y.1983), the court held that the broadcasting of an allegedly trademark infringing television program into the forum state was itself a sufficient contact for personal jurisdiction. Here, both parties agree that the alleged infringing occurs in Minnesota.

Defendant, however, points out that it did not provide MIGHTY ORBOTS to Min-

---

**3.** The court stated that plaintiff could sue in states where defendants sold the allegedly in-

fringing mattresses. *Land-O-Nod,* 708 F.2d at 1343.

nesota television stations, ABC did. Defendant adds that the "foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it is that the defendant's conduct and connection with the forum State is such that he should reasonably anticipate being haled into court there." *Quoting World-Wide Volkswagen,* 444 U.S. at 297, 100 S.Ct. at 567. Defendant concedes that when it reached its licensing agreement with ABC, the prospect of MIGHTY ORBOTS being aired in Minnesota was foreseeable. Still, defendant argues that such foreseeability does not rise to the level of a reasonable expectation that defendant would have to litigate an action in Minnesota.

While defendant's theory is facially appealing, a closer examination of *World-Wide Volkswagen* indicates that the theory fails. In *World-Wide Volkswagen,* the defendant automobile manufacture[4] had no contacts at all with the forum state, Oklahoma, except that one of defendant's automobiles was in an accident in Oklahoma. The car's gas tank caught fire, and the plaintiffs asserted a products liability claim against defendant in Oklahoma. Defendant sold its cars only in the northeastern United States and plaintiffs had purchased their car in New York. Plaintiffs argued that even though defendant sold cars only in the Northeast, it was foreseeable, given the mobileness of cars, that one of defendant's cars could cause injury in Oklahoma. The Supreme Court granted that this contingency was foreseeable, but the Supreme Court stated that such foreseeability did not provide sufficient contacts with Oklahoma.[5]

Here, when defendant TMS contracted with ABC, the airing of MIGHTY ORBOTS in Minnesota and nationwide was much more than a foreseeable possibility. Defendant obviously knew that ABC would be syndicating the program nationwide, including Minnesota. The Supreme Court,

moreover, stated in *World-Wide Volkswagen,* 444 U.S. at 298, 100 S.Ct. 567, that states could still assert "personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." By reaching an agreement with ABC, defendant placed its program into the stream of commerce with the expectation that viewers in all states would watch it.

The Court has yet to deal with the *Land-O-Nod* considerations that are of secondary importance. Of course, Minnesota does have an interest in providing a forum for its residents, but plaintiffs asserting trademark infringement claims often have the resources to litigate in distant forums. Similarly, convenience of the parties does not dictate the outcome in this case. Both parties are large corporations, and both have the resources to litigate in the others' "home court." Thus, neither party's claim of inconvenience is compelling. In sum, the Court concludes that it can assert personal jurisdiction over the defendant.

**VENUE**

■ Defendant argues that even if the Court can assert personal jurisdiction over it, venue in the District of Minnesota is not proper. A court finding that personal jurisdiction exists over a defendant does not preclude the court from dismissing the case because of improper venue. *German Educ. Tel.,* 569 F.Supp. at 1533 (S.D.N.Y. 1983); *see also Transamerica Corp.,* 419 F.Supp. at 1263 (S.D.N.Y.1976); *but see Stith v. Manor Baking Co.,* 418 F.Supp. 150, 154–55 (W.D.Mo.1976).

The two relevant venue statutes in question are 28 U.S.C. §§ 1391(b), (c), which provide:

(b) A civil action wherein jurisdiction is not founded solely on diversity of citizenship may be brought only in the judicial district where all defendants reside, or in

---

4. The case involved other defendants, but this simplification does not affect the case's legal implications.

5. The passage of *World-Wide Volkswagen* which defendant quotes above refers to this point.

which the claim arose, except as otherwise provided by law.

(c) A corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes.

Plaintiff states that venue is proper under both of these subsections.

### Section 1391(b)

█ Plaintiff argues that venue is proper under section 1391(b) because plaintiff's "claim arose" in Minnesota. As indicated earlier, both parties agree that plaintiff's claims arose in Minnesota and throughout the nation. *See Vanity Fair*, 234 F.2d at 639. Yet defendant relies on *Leroy v. Great Western United Corp.*, 443 U.S. 173, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979) in responding that venue in Minnesota is not proper under section 1391(b).

In *Leroy*, the Supreme Court stated that the purpose of venue statutes is generally to protect defendants from litigating in unfair and inconvenient forums. *Leroy*, 443 U.S. at 183–84, 99 S.Ct. at 2716. The Supreme Court concluded that in passing section 1391(b), Congress did not intend to give plaintiffs an "unfettered choice among a host of different districts." 443 U.S. at 185, 99 S.Ct. at 2717. The Supreme Court continued:

> Rather, [Congress] restricted venue either to the residence of the defendants or to "a place which may be more convenient to the litigants"—*i.e.*, both of them —"or to the witnesses who are to testify in the case". In our view, therefore, the broadest interpretation of the language of § 1391(b) that is even arguably acceptable is that in the unusual case in which it is not clear that the claim arose in only one specific district, a plaintiff may

choose between those two (or conceivably even more) districts that with approximately equal plausibility—in terms of the availability of witnesses, the accessability of other relevant evidence, and the convenience of the defendant (but not the plaintiff)—may be assigned as the locus of the claim.

*Leroy*, 443 U.S. at 185, 99 S.Ct. at 2717 (footnote omitted).

Both parties agree that the present action is an "unusual case" under *Leroy* because plaintiff's claims arose throughout the country. Accordingly, venue is proper in Minnesota under section 1391(b) if Minnesota is an approximately equal forum to other forums in terms of access to witnesses, evidence, and in terms of convenience to the defendant. Based upon the affidavits and other materials submitted to the Court, it appears that Minnesota and the Central District of California are approximately equal in access to evidence and witnesses. However, the Central District of California is clearly a more convenient forum for defendant than is Minnesota from the standpoint of many of defendant's witnesses and evidence concerning the development of the program in question.[6]

A case strikingly similar to the present action relied on *Leroy* in finding improper venue. In *German Educ. Tel.*, 569 F.Supp. 1529 (S.D.N.Y.1983), the court concluded that it did have personal jurisdiction over an Oregon broadcasting company. The Oregon company broadcast programs nationwide which allegedly infringed on plaintiff's trademark. Except for the broadcasts, the Oregon company had no contacts with New York whatsoever. Because the alleged infringements took place in New York, as well as nationwide, the court concluded that it had personal jurisdiction over the Oregon company. *German Educ. Tel.*, 569 F.Supp. at 1532–33. Nevertheless, the

---

6. Under 28 U.S.C. § 1404(a) defendants can transfer venue only if they establish that their inconvenience "strongly" outweighs the inconvenience plaintiffs would suffer by a transfer of venue. *E.g., Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir.1970), *cert. denied*, 401 U.S. 910, 91 S.Ct. 871, 27 L.Ed.2d 808 (1971). Section 1404(a), however, applies only when venue is proper in the first place. Thus, an attempt to transfer venue under section 1404(a) involves attempting to transfer venue from one proper district to another proper district. By contrast, the analysis in *Leroy* seeks to determine if a specific venue is proper in the first place.

court relied on *Leroy* in dismissing plaintiff's action for improper venue. *German Educ. Tel.*, 569 F.Supp. at 1533–34. Similarly, this Court concludes that venue is not proper under section 1391(b) in the present action.

### Section 1391(c)

*German Educ. Tel.* and *Leroy* involved only section 1391(b) and here plaintiff also seeks to establish venue under section 1391(c) because plaintiff asserts that defendant is "doing business" in Minnesota. Plaintiff argues that because defendant is doing business in Minnesota for purposes of personal jurisdiction, defendant is also doing business in Minnesota for purposes of venue.

Courts are split as to whether "doing business" under section 1391(c) requires more contacts with the forum state than personal jurisdiction requires. *Johnson Creative Arts, Inc. v. Wool Masters, Inc.*, 573 F.Supp. 1106, 1113–14 (D.Mass.1983), *aff'd*, 743 F.2d 947 (1st Cir.1984). Under either test, however, plaintiff cannot establish that venue is proper under section 1391(c).

In deciding it could assert personal jurisdiction over defendant, the Court relied on the fact that defendant caused a tort to occur in Minnesota and that defendant knew its allegedly tortious broadcasts would be aired in all states. The Court did not base its decision that personal jurisdiction existed on the rationale that defendant was doing business in Minnesota.[7] Defendant's only contact with Minnesota is the broadcasts of MIGHTY ORBOTS, and ABC, not defendant, sold these programs to Minnesota ABC affiliates. Defendant, therefore, is not doing business in Minnesota, and venue is not proper in Minnesota under section 1391(c).

### Transfer

Because the Court has concluded that venue is not proper under either 28 U.S.C. § 1391(b) or (c), the Court must either dismiss the action or transfer the case to a district where venue is proper. 28 U.S.C. § 1406(a). The Court has discretion to transfer a case instead of dismissing it, if the transfer would be in the interest of justice. The Court will transfer this case to the United States District Court for the Central District of California.

Based on the foregoing, IT IS ORDERED that this case be transferred to the United States District Court for the Central District of California.

---

7. Minn.Stat. § 303.13, subd. 1(3) does state that if a corporation commits a tort in Minnesota causing injury to a Minnesota resident, the corporation is "deemed" to be doing business in Minnesota. This designation, however is simply a result of how the mechanics of this statute operate. The mechanical operation of a long-arm statute, moreover, does not determine whether a corporation is "doing business" under 28 U.S.C. § 1391(c). *Johnson Creative Arts v. Wool Masters, Inc.*, 743 F.2d 947, 951 (1st Cir. 1984); *Honda Associates, Inc.*, 374 F.Supp. at 889; *see also, Leroy*, 443 U.S. at 183 n. 15, 99 S.Ct. at 2716 n. 15 (definitions of terms in venue statute determined by federal law); *cf. Scullin Steel*, 616 F.2d at 312 (satisfying state long arm statute does not establish satisfaction of due process requirements for personal jurisdiction).