**ICC PRIMEX PLASTICS CORP., Plaintiff,**

v.

**LA/ES LAMINATI ESTRUSI TERMO-PLASTICI S.P.A., Co–Ex Corporation, and Cosimo Conterno, Defendants.**

**No. 89 Civ. 8127 (JES).**

United States District Court, S.D. New York.

Oct. 10, 1991.

weeks.

Bigham Englar Jones & Houston, New York City (Francis A. Montbach, Karin A. Schlosser), of counsel, for plaintiff.

Peter L. Costas, Hartford, Conn. (Peter L. Costas), of counsel, for defendants.

## OPINION AND ORDER

SPRIZZO, District Judge:

Plaintiff ICC Primex Plastics Corp. ("Primex") brings this action against defendants LA/ES Laminati Estrusi Termoplastici S.P.A. ("LA/ES"), CO–EX Corporation ("CO–EX") and individual defendant Cosimo Conterno. The action stems from a failed joint venture allegedly entered into by Primex and LA/ES, and includes allegations that the defendants breached their obligations under a letter of intent to form the joint venture, misappropriated information provided to them by the plaintiff and used that information for their own purposes in derogation of a fiduciary duty, interfered with Primex's business opportunities, and breached fiduciary duties owed to the plaintiff. All defendants move to dismiss the action for lack of personal jurisdiction, Fed.R.Civ.P. 12(b)(2), or for a transfer to the District of Connecticut. 28 U.S.C. § 1404(a). The Court has held a hearing and considered all of the testimony and exhibits submitted by the parties and, for the reasons that follow, the motions to dismiss are granted.[1] The following consti-

---

1. In view of the Court's disposition of the motions to dismiss, the Court need not address the defendants' transfer motions.

tutes the Court's findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52(a).

## FACTS

■ LA/ES is an Italian Corporation engaged in the business of acetate sheet production for the optical industry. *See* Transcript of Hearing ("Tr.") at 43. Its main office is in Italy and it has no offices or sales personnel in the State of New York. *See* Tr. 44. LA/ES's sales representatives solicit business throughout the world and the United States, including the State of New York, primarily by mail and telephone from Italy. *See* Defendant's Response to Plaintiff's Interrogatories No. 9 ("Int.") (annexed to Affidavit of Karin Schlosser ("Schlosser Aff.") at Ex. 14). Those representatives have made sales calls upon customers in New York on occasion, and have attended some trade shows in New York. *See* Tr. 47; Int. No. 9. Moreover, in addition to the sales representatives located in Italy, LA/ES presently has a sales agent located in Connecticut, Roland Optical Co., which receives a commission on its sales.[2] *See* Tr. 47. LA/ES also has a number of customers in New York and received gross revenue of $404,130.00 from sales to New York customers between June 1, 1987 and August 1990. *See* Int. No. 56 & Schedule C.

Individual defendant Cosimo Conterno is an Italian citizen residing in Switzerland. *See* Tr. 43. He is the chief executive officer of both LA/ES and Estrusione Materie Plastiche, S.A. ("EMP"), a Swiss corporation which manufactures extrusion polycarbonate thin wall sheet. *See id.* Conterno does not maintain any offices or residences in New York, but he has travelled to New York and continues to travel to Connecticut from time to time for business reasons.

*See* Tr. 44; Affidavit of Cosimo Conterno at ¶ 14 (July 31, 1990) ("Conterno Aff. I"); Int. No. 61–68.

In late 1987, Conterno and LA/ES entered into discussions with Primex regarding the possibility of forming a joint venture for the production and distribution in the United States of polycarbonate wall sheets, which are typically used in the construction of greenhouses. *See* Tr. 19–20, 44–47, 100–03. These discussions included trips by plaintiff's representatives Murray Aibinder and Paul Bertsch to Italy to meet with Conterno and inspect LA/ES' plants, *see* Tr. 45–46, 100, 136, and visits by Conterno to Primex's offices in Indiana and New Jersey. *See* Tr. 46; Conterno Aff. I at ¶ 4. In addition, LA/ES and Conterno furnished technical materials and other data to Primex. *See* Tr. 46–47, 133, 143–45.

These preliminary discussions resulted in the execution of a letter of intent on January 12, 1988. *See* Schlosser Aff. at Ex. 1. The letter of intent contemplated three stages leading to the formation of the joint venture: (1) the parties would explore the feasibility of the project, with Primex responsible for the investigation of the cost and feasibility of marketing, distribution, and manufacturing the product in the United States and LA/ES and Conterno responsible for negotiations with suppliers of resin, a raw material necessary for production; (2) the parties would form a corporation which would market in the United States polycarbonate sheets manufactured in Europe for six months; and (3) if the marketing experiment phase proved successful, the company would thereafter begin to manufacture as well as distribute the product in the United States. *See* Schlosser Aff. at Ex. 1; *see* Tr. 101–104. The evidence at the hearing established that the

---

2. LA/ES utilized Jescar Enterprises, Inc., a sales representative located in Spring Valley, New York, to solicit customers from June 1987 to September 1989. *See* Int. No. 9, 28–29; Tr. 87–89. However, that relationship terminated before the filing of the complaint in December 1989 and thus cannot provide a basis for jurisdiction. *See Arrow Trading Co. v. Sanyei Corp.,* 576 F.Supp. 67, 69 (S.D.N.Y.1983) (corporation must be doing business at the time the action is

brought); *Puerto Rico Maritime Shipping Auth. v. Almogy,* 510 F.Supp. 873, 878 (S.D.N.Y.1981) (same). Moreover, Jescar never had authority to enter into contracts on behalf of LA/ES, *see* Tr. 87, and therefore would not provide a basis for the exercise of personal jurisdiction under *Frummer v. Hilton Hotels Int'l, Inc.,* 19 N.Y.2d 533, 537–38, 227 N.E.2d 851, 854, 281 N.Y.S.2d 41, 44–45, *cert. denied,* 389 U.S. 923, 88 S.Ct. 241, 19 L.Ed.2d 266 (1967).

most critical prerequisite for the success of the joint venture was the success of Conterno's efforts to obtain a global contract for raw materials, such as the resin necessary to manufacture the product. *See* Tr. 76, 102–05, 120–22; Defendants' Memorandum of Law in Support of Motion to Dismiss at Ex. B (letter from John Farber to Cosimo Conterno (March 8, 1988)). However, although Conterno had discussions with some suppliers and visited one in May, 1988 in Michigan, he was not able to obtain such a contract. *See* Schlosser Aff. at Ex. 2 (letter from C. Conterno to M. Aibinder (Aug. 24, 1988)).

While Conterno was endeavoring to obtain the contract, Primex spoke to a number of sales representatives and requested that one of those firms, Polymark, Inc. ("Polymark") make a presentation to the joint venture partners. The principals of Polymark were David Bilhorn, Byron Roderick, and Leo Carter. A meeting was held at Primex's offices in New York on May 18, 1988,[3] the major purpose of which was to introduce the Polymark representatives to Conterno. *See* Tr. 49–54, 63–64, 71–74, 107–08, 138–41; Affidavit of Murray Aibinder at ¶ 17. Following their presentation, which Conterno criticized as overly "optimistic," Tr. 55, 74, Aibinder and Conterno decided to offer the position to Bilhorn and Roderick, but not Carter. *See* Tr. 75–76, 109–10; Affidavit of David Bilhorn ("Bilhorn Aff.") at ¶ 8. Polymark rejected that offer. *See* Tr. 60, 68, 109–10; Bilhorn Aff. at ¶ 8. Moreover, although Aibinder had some discussions with Polymark after the meeting, he was not successful in persuading Polymark to accept the position as sales representatives on the basis offered by Aibinder and Conterno. *See* Tr. 115–17.

Other matters were also discussed at the meeting, including product specifications, commercial considerations, and the need for a favorable contract for raw materials. *See* Tr. 107. At the end of the meeting, it was agreed that Aibinder would draft the joint venture agreement, and that Conterno would provide more technical information to Primex and continue to try to obtain the necessary contract for the raw materials. *See* Tr. 111–12.

However, unbeknownst to Aibinder, after Polymark rejected the offer made by Primex and LA/ES, David Bilhorn contacted Conterno to inquire if LA/ES would be interested in exporting its products to the United States and marketing them through Polymark. *See* Tr. 59; Affidavit of Cosimo Conterno at ¶ 4 (Dec. 28, 1990) ("Conterno Aff. II"); Bilhorn Aff. at ¶ 9. Since he had been thus far unable to obtain a price concession on the raw materials and since he felt that Primex had no independent knowledge of the marketplace, Conterno decided to investigate the possibility of a business relationship with Polymark. *See* Tr. 59, 69, 84–86; Conterno Aff. II at ¶¶ 4–5. He asked Ian Jeremy Baines to speak to Bilhorn. *See* Tr. 10–12, 69, 85–86. Baines reported to Conterno that he thought that Bilhorn was knowledgeable about the business. *See* Tr. 14. Thereafter, Baines and Conterno decided to form a company to market polycarbonate structured sheets in the United States and to hire Bilhorn as a salesman. *See* Tr. 14–15, 70.

The company they formed in September 1988 was defendant CO–EX Corporation.[4] CO–EX is a Connecticut corporation and has its principal place of business there. *See* Tr. 91. It has no offices or employees in New York, *see* Tr. 91–92, but it does solicit business in the state by mail and telephone. *See* Tr. 3–4. Its representatives, including Bilhorn,[5] also have attend-

---

**3.** Although the record is unclear as to whether this meeting was on May 18, 1988 or May 24, 1988, *compare* Tr. 121–25 *with* Aibinder Aff. at ¶ 17; Schlosser Aff. at ¶ 6, the Court accepts Aibinder's testimony that the correct date was May 18, 1988.

**4.** At the time that CO–EX was formed, EMP owned fifty percent of its stock and Baines owned the other fifty percent. In May 1990, Baines transferred all of his stock to EMP which is now the sole shareholder. *See* Affidavit of Robert L. Russell at ¶ 2 (Aug. 9, 1990); Affidavit of Ian Jeremy Baines at ¶ 1 (Dec. 31, 1990); Conterno Aff. I at ¶¶ 11, 13.

**5.** Bilhorn was employed as a vice-president in charge of marketing for CO–EX from September 1988 to approximately May 1989, when he was terminated because he was not generating a sufficient amount of business. *See* Tr. 15–16, 34; Affidavit of David Bilhorn at ¶ 11 (Oct. 11,

ed trade shows and made occasional sales calls upon New York customers. *See* Tr. 4–5, 10, 16–17, 29. Moreover, CO–EX presently sells products to potential customers in New York through a representative in New Jersey, whose sales must be approved by CO–EX. *See* Tr. 92, 95–96.

The evidence further demonstrated that CO–EX's sales to New York customers between August 1988 and June 1990 totalled approximately $120,000 and constituted approximately 10% of CO–EX's business. *See* Tr. 18; Schlosser Aff. at Exs. 9, 10, 11. In addition, CO–EX sometimes provides its customers with promotional material seeking to have them persuade their customers to purchase its product, however, none of CO–EX's customers have any authority to bind CO–EX. *See* Tr. 24–26. Nor did CO–EX have any control over the manner or means by which its customers resold its product. *See* Tr. 21, 24–27, 31–32.

## DISCUSSION

■ Plaintiff first argues that CO–EX and LA/ES are subject to personal jurisdiction because those companies are "doing business" in New York State. Under N.Y.Civ.Prac.L. & R. ("CPLR") 301 (McKinney 1990), a court may exercise personal jurisdiction over a defendant on any cause of action where the defendant is " 'engaged in such a continuous and systematic course of "doing business" here as to warrant a finding of its "presence" in this jurisdiction.' " *Landoil Resources Corp. v. Alexander & Alexander Servs. Inc.*, 918 F.2d 1039, 1043 (2d Cir.1990) (quoting *McGowan v. Smith*, 52 N.Y.2d 268, 272, 419 N.E.2d 321, 323, 437 N.Y.S.2d 643, 645 (1981)). In applying this test, New York courts have consistently held that the solicitation of business alone will not justify the exercise of general personal jurisdiction over defendant. *See Landoil Re-*

*sources, supra,* 918 F.2d at 1043; *Laufer v. Ostrow,* 55 N.Y.2d 305, 310, 434 N.E.2d 692, 694, 449 N.Y.S.2d 456, 459 (1982). However, "if the solicitation is substantial and continuous, and defendant engages in other activities of substance in the state, then personal jurisdiction may properly be found to exist." *Id.*

The evidence in this record falls far short of establishing by a preponderance of the evidence, *see Ball v. Metallurgie Hoboken–Overpelt, S.A.,* 902 F.2d 194, 197 (2d Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 150, 112 L.Ed.2d 116 (1990), that either LA/ES or CO–EX are "doing business" in the state so as to warrant a finding that they are present in New York. Indeed, taking the evidence in its most favorable light, the record demonstrates only that those companies have solicited business in New York or have made sales to New York customers. However, neither company has an office in New York, or even a representative visiting New York on anything remotely resembling a regular basis. The minimal visits to customers or trade shows in New York established by this record demonstrate at best only a sporadic presence and are thus plainly insufficient to support the exercise of personal jurisdiction over either company.

Nor does the circumstance that CO–EX's customers occasionally encourage others to purchase CO–EX's goods provide a basis for the exercise of jurisdiction. This is especially true since those customers had no power to bind CO–EX and CO–EX had no power to control these activities. *Compare Katz Communications, Inc. v. Evening News Ass'n,* 705 F.2d 20, 24 (2d Cir. 1983).

■ Having concluded that those defendants are not present in New York so as to warrant the exercise of personal jurisdiction, under CPLR 301, the Court must next

1990); Affidavit of I. Jeremy Baines at ¶ 4 (Dec. 31, 1990). During that time he lived in Wisconsin, but claims in his affidavit that he travelled extensively on behalf of CO–EX and made frequent trips to New York. *See* Affidavit of David Bilhorn at ¶ 12. However, those claims are unsupported by documentary evidence, *compare* Affidavit of Robert L. Russell (Dec. 31,

1990) at ¶ 6 & Ex. 3, and Bilhorn did not testify at the hearing. Moreover, Baines testified at the hearing that, although Bilhorn could have visited other New York customers without his knowledge, he only recalled one visit by Bilhorn to a New York customer. *See* Tr. 4, 19–21. The Court credits Baines' testimony in that regard.

consider plaintiff's argument that defendants Conterno and LA/ES are subject to personal jurisdiction under CPLR 302(a)(1), which provides that a defendant who has "transacted business" in New York may be sued on any cause of action arising out of that transaction. *See Hoffritz For Cutlery, Inc. v. Amajac, Ltd.,* 763 F.2d 55, 58–59 (2d Cir.1985). Plaintiff relies upon Conterno's attendance at the meeting in New York on May 18, 1988, at which matters relating to the joint venture were discussed.

In assessing whether one meeting satisfies the test of CPLR 302(a)(1), "the relevant inquiry is whether 'the defendant has performed "purposeful acts" in New York in relation to the contract, albeit preliminarily or subsequent to its execution.'" *Rates Technology, Inc. v. Diorio,* 626 F.Supp. 1295, 1297 (E.D.N.Y.1986) (quoting *American Contract Designers, Inc. v. Cliffside, Inc.,* 458 F.Supp. 735, 739 (S.D.N.Y.1978) (in turn quoting *Longines–Wittnauer Watch Co. v. Barnes & Reinecke, Inc.,* 15 N.Y.2d 443, 457, 209 N.E.2d 68, 75, 261 N.Y.S.2d 8, 18, *cert. denied,* 382 U.S. 905, 86 S.Ct. 241, 15 L.Ed.2d 158 (1965)); *accord Hoffritz, supra,* 763 F.2d at 60. Contract negotiations in New York will satisfy that standard if the discussions "substantially advanced" or were "essential to" the formation of the contract or advanced the business relationship to a more solid level. *See, e.g., Cutco Indus. v. Naughton,* 806 F.2d 361, 367 (2d Cir.1986); *Rates Technology, supra,* 626 F.Supp. at 1298; *Interface Biomedical Lab. Corp. v. Axiom Medical, Inc.,* 600 F.Supp. 731, 736 (E.D.N.Y.1985); *George Reiner & Co. v. Schwartz,* 41 N.Y.2d 648, 654, 363 N.E.2d 551, 555, 394 N.Y.S.2d 844, 848 (1977); *McKee Elec. Co. v. Rauland–Borg Corp.,* 20 N.Y.2d 377, 382, 229 N.E.2d 604, 607, 283 N.Y.S.2d 34, 37–38 (1967). Tested by that standard, plaintiff has failed to establish a basis for jurisdiction under CPLR 302(a)(1).

The evidence here clearly established that the joint venture, very much in its exploratory phase in May, 1988, was not significantly advanced by the May meeting in New York. Although the letter of intent contemplated that the parties would commence the second phase of the joint venture sometime after March 31, 1988 by forming the marketing company, it was clear from the testimony that the parties were far from ready to enter the marketing phase of the joint venture as of May 1988.

Indeed, the very purpose of the New York meeting, *i.e.* to have the sales representatives meet Conterno and possibly to hire them, demonstrates that the marketing phase had barely begun. *See* Tr. 49, 107–08. Moreover, since the Court credits Conterno's testimony that he was not impressed with the presentation made and if anything became more convinced than he already was that Primex had no experience in marketing, the meeting, if anything, impeded the progress of the proposed joint venture. *See* Tr. 55.

Nevertheless, Primex and Conterno and LA/ES still made an offer of employment to Bilhorn and Roderick, which was rejected because it did not include their partner, Carter. *See* Tr. 109–10. Nothing else of significance happened at that meeting other than Aibinder being asked to draft a joint venture agreement and Conterno agreeing to continue to do what he had already been doing, *i.e.,* looking for a supplier of raw materials as well as supplying further technical information to Primex. *See* Defendants' Reply Memorandum of Law in Support of Motions to Dismiss, Ex. C (Telex from M. Aibinder to C. Conterno (June 6, 1988)).

It is clear therefore that this meeting did not substantially advance the proposed joint venture. *Cf. Saudi Computer Aided Translation Ltd. v. Weidner Commun. Corp.,* 663 F.Supp. 1104, 1107 (S.D.N.Y.1987) ("an unproductive and insubstantial meeting [in New York] is probably insufficient to constitute transacting business under section 302(a)(1)"); *McKee Elec., supra,* 20 N.Y.2d at 382, 229 N.E.2d at 607, 283 N.Y.S.2d at 37–38 (one visit by officer of defendant corporation to smooth out problems in contractual relationship in-

sufficient).[6] Nor does the evidence support plaintiff's contention that the meeting advanced the joint venture because other matters were discussed. The Court accepts Conterno's testimony that those discussions were brief because he had to go to the airport. *See* Tr. 58. Furthermore, most of these other matters discussed at the meeting had been previously discussed, with some minor exceptions. *See* Tr. 113–14. Finally, the meeting did nothing to advance the most important need of the joint venture, *i.e.* a contract from a supplier of raw materials.

■ Plaintiff's final argument is that all three defendants are subject to personal jurisdiction under CPLR 302(a)(3). That statute permits a court to exercise personal jurisdiction over a non-domiciliary if he: (1) commits a tortious act outside of the State of New York that causes injury to person or property inside the state; and (2) either (a) the defendant regularly does or solicits business or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in New York; or (b) the defendant expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce. Primex contends that the defendants have tortiously misappropriated business information intended for the joint venture, have interfered with its business relations by hiring Bilhorn, and have therefore injured it in New York by causing it to lose business with New York customers. This argument fails because the evidence does not support plaintiff's contentions.

New York law is clear that where a plaintiff claims to have been injured by a tortious interference with its business, indirect financial loss resulting from the fact that the injured person resides or is domiciled in New York will not support jurisdiction under section 302(a)(3). *See, e.g., Lehigh Valley Indus., Inc. v. Birenbaum,* 527 F.2d 87, 94 (2d Cir.1975); *Fantis Foods, Inc. v. Standard Importing Co.,* 49 N.Y.2d 317, 326–27, 402 N.E.2d 122, 126, 425 N.Y.S.2d 783, 787 (1980). Rather plaintiff must also establish a significant economic injury in New York, such as the loss or threatened loss of important New York customers. That rule is well illustrated by *Sybron Corp. v. Wetzel,* 46 N.Y.2d 197, 205, 385 N.E.2d 1055, 1059, 413 N.Y.S.2d 127, 132 (1978), where there was evidence that plaintiff's business from New York sales "could suffer significantly" and that the defendant had actively and successfully solicited one of the plaintiff's largest New York customers. *See id.; see also Cavalier Label Co. v. Polytam, Ltd.,* 687 F.Supp. 872 (S.D.N.Y.1988); *Broadcasting Rights Int'l v. Societe du Tour de France,* 675 F.Supp. 1439, 1445 (S.D.N.Y.1987).

No such evidence is present here. Although plaintiff resides in New York, it has failed to prove that it has lost or is likely to lose any business in New York to the defendants. Instead, plaintiff has not even demonstrated the extent to which it is selling polycarbonate structured sheets in New York, and has not identified any New York customers that were lost to or even solicited by the defendants. Nor has there been any showing that CO–EX's three largest New York customers, Oehmsen Greenhouses, Ward Plastics, and Slater, ever did business with Primex or were even solicited by Primex. Consequently, plaintiff's conclusory assertion in an affidavit that it will lose New York customers to the defendants falls far short of establishing by a preponderance of the evidence that the defendants are subject to personal jurisdiction under CPLR 302(a)(1) of New York law.[7]

---

**6.** This meeting is even less consequential in light of the other evidence noted above concerning other meetings and activities outside of New York which were much more significant in advancing the joint venture. *See* Tr. 140–41; *I. Oliver Engebretson v. Aruba Palm Beach Hotel,* 587 F.Supp. 844, 849 (S.D.N.Y.1984); *Nat'l Spinning Co. v. Talent Network, Inc.,* 481 F.Supp. 1243, 1246 (S.D.N.Y.1979).

**7.** Since the Court has concluded that plaintiff failed to sustain its burden of showing that the alleged tort committed by the defendants had a sufficient effect in New York, the Court need not consider whether the defendant has sufficient contacts with New York to satisfy section 302(a)(3).

## CONCLUSION

Accordingly, for the foregoing reasons all defendants' motions to dismiss for lack of personal jurisdiction are granted and the complaint is hereby dismissed in its entirety. The Clerk of the Court shall enter an appropriate judgment and close the above-captioned action.

It is SO ORDERED.