**MTV NETWORKS, A DIVISION OF VIACOM INTERNATIONAL, INC., Plaintiff,**

v.

**Adam CURRY, Defendant.**

No. 94 Civ. 3271 (LMM).

United States District Court, S.D. New York.

Oct. 28, 1994.

Barbara A. Solomon, Weiss Dawid Fross Zelnick, New York City, for MTV Networks.

Joseph F. Donley, Shereff, Friedman, Hoffman & Goodman, New York City, for Adam Curry.

### MEMORANDUM AND ORDER

McKENNA, District Judge.

Plaintiff, MTV Networks ("MTVN"), brought this action against Defendant, Adam Curry ("Curry"). Plaintiff now moves the Court to dismiss Curry's counterclaims, pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure, or in the alternative, for a more definite statement of the counterclaims, pursuant to Rule 12(e). For the reasons stated below, Plaintiff's motion is granted in part and denied in part.

## I. Legal Standard for 12(b)(6) Motion

In the course of resolving a motion to dismiss pursuant to Rule 12(b)(6), the Court reads the complaint generously, accepting the truth of, and drawing all reasonable inferences from, the well-pleaded factual allegations. *Brass v. American Film Technologies, Inc.,* 987 F.2d 142, 150 (2d Cir.1993); *accord California Motor Transp. Co. v. Trucking Unlimited,* 404 U.S. 508, 515, 92 S.Ct. 609, 614, 30 L.Ed.2d 642 (1972); *Allen v. Westpoint–Pepperell, Inc.,* 945 F.2d 40, 44 (2d Cir.1991); *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47–48 (2d Cir. 1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1561, 118 L.Ed.2d 208 (1992); *Frasier v. General Elec. Co.,* 930 F.2d 1004, 1007 (2d Cir.1991).

> When determining the sufficiency of plaintiff['s] claim for Rule 12(b)(6) purposes, consideration is limited to the factual allegations in ... [the] complaint, which are accepted as true, to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiff['s] possession or of which plaintiff[ ] had knowledge and relied on in bringing suit.

*Brass,* 987 F.2d at 150 (*citing Cortec,* 949 F.2d at 47–48).

The Court will only dismiss a complaint for failure to state a claim when the Court finds beyond a doubt that plaintiff "can prove no set of facts" to support the claim that plaintiff is entitled to relief. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). The standards for dis-

missing claims under Rule 12(b)(6) are identical to the standards for dismissing counterclaims. *Schatt v. Curtis Management Group, Inc.,* 764 F.Supp. 902, 915 (S.D.N.Y. 1991).

Where, as here, the parties have submitted material outside the pleadings, the Court must either exclude those materials from consideration, or convert the motion to one for summary judgment. Fed.R.Civ.P. 12(c). *See generally* 5A C. Wright & A. Miller, *Federal Practice and Procedure* § 1366 (1969 & Supp.1986). The Court, in its discretion, has chosen to exclude these materials, and Plaintiff's motion is considered one for dismissal for failure to state a claim.

## II.

### A. Facts

The facts alleged in Curry's Answer and Counterclaims are as follows. Curry served as a video disc jockey ("VJ") for MTVN under a written contract through May 1, 1992. (Countercl. ¶ 2.) He continued to serve as an MTVN VJ through April, 1994, under "informal" terms. (*Id.* ¶¶ 2, 18.) Curry also engaged in activities in the contemporary music industry that were not directly related to his MTVN employment, such as hosting radio programs and live entertainment events. (*Id.* ¶ 3.)

In approximately June, 1993, Curry met with MTVN Vice President Matthew Farber ("Farber") and discussed, *inter alia,* an Internet service [1] he was developing with the Internet site address [2] "mtv.com". (*Id.* ¶ 9.)

---

1. The Internet is the world's largest computer network (a network consisting of two or more computers linked together to share electronic mail and files). The Internet is actually a network of thousands of independent networks, containing several million "host" computers that provide information services. *The Internet Unleashed* 22–23 (Sams Publishing 1994). An estimated 25 million individuals have some form of Internet access, and this audience is doubling each year. Philip Elmer–Dewitt, *Battle for the Soul of the Internet,* Time, July 25, 1994, at 50. The Internet is a cooperative venture, owned by no one, but regulated by several volunteer agencies.

2. Each host computer providing Internet services ("site") has a unique Internet address. Users

seeking to exchange digital information (electronic mail ("email"), computer programs, images, music) with a particular Internet host require the host's address in order to establish a connection.

Hosts actually possess two fungible addresses: a numeric "IP" address such as 123.456.123.12, and a alphanumeric "domain name" such as microsoft.com, with greater mnemonic potential. *See The Internet Unleashed, supra* note 1, at 73–75. Internet domain names are similar to telephone number mnemonics, but they are of greater importance, since there is no satisfactory Internet equivalent to a telephone company white pages or directory assistance, and domain names can often be guessed. A domain name mirroring a corporate name may be a valuable corporate

Curry alleges that while Farber disclaimed any interest by MTVN in entering a joint venture, he indicated that Curry was free to continue development of the Internet site at his own expense. (*Id.*)

By approximately August, 1993, Curry had announced the mtv.com address on MTVN broadcasts. (*Id.* ¶ 8.) On the afternoon of one August taping, Curry claims to have had a conversation about mtv.com with Joel Stillerman ("Stillerman"), a senior MTVN executive. (*Id.* ¶ 10.) In this conversation Stillerman "made clear that MTVN had no objection to Curry's use and development of the mtv.com address." (*Id.* ¶ 11.)

Curry alleges that between August, 1993 and April, 1994, he discussed the mtv.com site with other MTVN personnel on "numerous" occasions, receiving encouragement in his continuing development efforts. (*Id.* ¶ 13.) During the period August, 1993, to mid-January, 1994, Curry claims that MTVN programmers placed the graphic letters "mtv.com" on the television screen for viewers of the MTVN program "Top Twenty Countdown." (*Id.* ¶ 14.) In reliance on his discussions with MTVN executives and personnel, Curry continued to develop mtv.com at his own expense. (*Id.* ¶¶ 9, 11, 23.)

On January 19, 1994, MTVN formally requested that Curry cease use of the mtv.com address. (*Id.* ¶ 15.) However Curry alleges not only that MTVN programming continued to make on air references to the address, but that Stillerman asked him, sometime in February, to include certain materials at the mtv.com site. (*Id.*)

By the spring of 1994, Curry's mtv.com address had been accessed by millions of Internet users. (*Id.* ¶ 16.) Curry credits this success, in part, to a computer bulletin board[3] that facilitates communication between performers and other music professionals—a service he claims to have discussed with MTVN personnel since August, 1993. (*Id.* ¶ 15.)

Curry argues that MTVN was exploiting his development efforts to "test the waters" for their own interactive service. During the second half of 1993, he alleges that MTVN and Viacom explored their options for developing online services. (*Id.* ¶ 17.) These efforts culminated in an agreement between MTVN and America On–Line ("AOL") to provide a computer link to MTVN for a fee. (*Id.* ¶ 19.) The AOL/MTVN service will include a performer-music professional bulletin board similar to the one Curry developed at mtv.com. (*Id.*)

MTVN brought this action on several grounds, including trademark claims based on Curry's use of registered MTV marks and breach of Curry's employment contracts. Curry has counterclaimed for breach of oral contract, fraud/negligent misrepresentation, and unfair competition. The Court now considers MTVN's motion to dismiss these counterclaims.

**B. Breach of Contract Counterclaim**

■ Curry's breach of contract claim is grounded in his conversations with Farber, Stillerman and others, in which he was allegedly promised that MTVN would not interfere with his development of mtv.com. MTVN argues that the purported contract is void as it violates the relevant statute of frauds, New York General Obligations Law § 5–701 (McKinney's 1993). The statute provides in relevant part:

a. Every agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and

asset, as it facilitates communication with a customer base.

The uniqueness of Internet addresses is ensured by the registration services of the Internet Network Information Center ("Internic"), a collaborative project established by the National Science Foundation. *Id.* at 460. Internic "hand[s] out the names for free under a very simple rule: First come, first served. Trademark violations are the requestor's responsibility." Joshua Quittner, *Making a Name On the Internet*, Newsday, October 7, 1994 at A4 (discussing speculation in Internet addresses such as mcdonalds.com).

3. Computer bulletin boards generally offer both private electronic mail services and newsgroups. The latter is essentially email directed to the community at large, rather than a private recipient. *See generally* John R. Levine & Carol Baroudi, *The Internet for Dummies* (1993). A bulletin board is an interactive or bidirectional service that cannot currently be offered through cable television transmissions.

subscribed by the party to be charged therewith, or by his lawful agent, if such agreement, promise or undertaking:

1. By its terms is not to be performed within one year from the making thereof . . .

In New York, oral agreements violate the statute of frauds only if "by their very terms [they] have absolutely no possibility in fact and law of full performance within one year." *D & N Boening, Inc. v. Kirsch Beverages, Inc.,* 63 N.Y.2d 449, 454, 483 N.Y.S.2d 164, 472 N.E.2d 992 (1984). "The question is not what the probable, or expected, or actual performance of the contract was; but whether the contract, according to the reasonable interpretation of its terms, required that it should not be performed within the year." *Id.* at 454, 483 N.Y.S.2d 164, 472 N.E.2d 992 (*quoting Warner v. Texas & Pacific Ry.,* 164 U.S. 418, 434, 17 S.Ct. 147, 153, 41 L.Ed. 495 (1896)).

MTVN urges the following interpretation of the agreement outlined by Curry's pleadings: Curry would be free to terminate the development of his Internet site at will, but MTVN would forever be obliged not to interfere with Curry's use of the site name mtv.com. Under this view of the contract, Curry's obligations would be susceptible of completion within a year, but MTVN's obligations would continue indefinitely.

The more straightforward reading of Curry's pleadings suggest two performances that are susceptible of completion within one year: Curry's. development of the Internet site—terminable by him at any time; and MTVN's forbearance to assert any rights it might have in the site—for so long as the site continued. Under this interpretation the performances are of equal duration, each terminating upon Curry's unilateral decision to discontinue operation of the site.

MTVN further presents the policy argument that Curry's purported contract is of a "classic" type that the statute of frauds was intended to bar, in which the party alleging the contract has already completed its performance, but seeks to impose continuing, indeed, perpetual obligations on the other side. This argument focuses on paragraph 21 of Curry's Answer and Counterclaims, which states:

> In consideration of its agreement to renounce, or otherwise refrain from claiming rights to, the mtv.com address, Curry agreed that, during such period as he continued to host MTVN programming and was still operating the mtv.com address, he would use such address while on air from time to time for the purpose of facilitating communication between MTVN and its audience.

MTVN argues that since Curry no longer hosts MTVN programming, his performance is now complete under the claimed oral contract, while its duties may continue forever. A line of New York cases presents some support for MTVN's position. *See, e.g., Zupan v. Blumberg,* 2 N.Y.2d 547, 550, 161 N.Y.S.2d 428, 141 N.E.2d 819 (1957); *North Shore Bottling Co. v. C. Schmidt & Sons, Inc.,* 22 N.Y.2d 171, 178, 292 N.Y.S.2d 86, 239 N.E.2d 189 (1968). The oral agreements in these cases involve the continuation of a salesman's commissions so long as accounts obtained for their employers remain active. Such agreements bear little similarity to the one alleged in this action.

In any event, the statute of frauds, "designed to guard against fraudulent claims supported by perjured testimony, was never meant to be used as 'a means of evading just obligations' based on contracts 'fairly, and admittedly, made.'" *Manhattan Fuel Co. v. New England Petroleum Corp.,* 422 F.Supp. 797, 801 (S.D.N.Y.1976) (citation omitted), *adhered to,* 439 F.Supp. 959 (S.D.N.Y.1977), *aff'd,* 578 F.2d 1368 (2d Cir.1978). Assuming, arguendo, that this contract involved one-sided obligations of indefinite duration, the Court is not convinced by the arguments submitted that the statute of frauds will bar Curry's claim. Development of the record to a fuller degree than what is presented on the present motion is warranted. In June or August, 1993, MTVN may simply have failed to appreciate the commercial potential of an Internet music site, and improvidently (in retrospect), granted Curry all of the rights he has alleged. MTVN now argues that Curry's purported agreement involves a "major property right" which would ordinarily be

embodied in a writing (Pl.'s Mem. at 14), but this characterization may derive from the 20–20 vision of hindsight.

Furthermore, despite the narrowly drawn wording of paragraph 21, the Court can infer from Curry's pleadings a claim of a loose synergetic relationship between a broadcast medium and an interactive computer service. Consideration would flow to MTVN under the alleged agreement so long as mtv.com materials stimulated interest in MTVN programming. That is, the price of MTVN's forbearance to assert any rights it would otherwise have in mtv.com was not *solely* Curry's promise to deliver on air promotion.

Finally, the Court notes that the statute of frauds does not present a bar to an agreement that may be characterized as a "joint venture." A joint venture is a "special combination of two or more persons where in some specific venture a profit is jointly sought without any actual partnership or corporate designation." *Forman v. Lumm,* 214 A.D. 579, 212 N.Y.S. 487, 490 (1st Dept.1925). It is widely recognized that the statute of frauds is generally inapplicable to joint ventures, because these agreements are terminable at will. *Yonofsky v. Wernick,* 362 F.Supp. 1005, 1027 (S.D.N.Y.1973); *see, e.g., In re Taub,* 4 F.2d 993 (2d Cir.1924); *Eidelberg v. Zellermayer,* 5 A.D.2d 658, 174 N.Y.S.2d 300, 304–305 (1st Dept.1958), *aff'd,* 6 N.Y.2d 815, 188 N.Y.S.2d 204, 159 N.E.2d 691 (1959).

Although Farber expressly disclaimed MTVN's interest in a joint venture during the June meeting (Countercl. ¶ 9), he may have intended only to convey MTVN's lack of interest in funding the project. A joint venture does not, however, require financial support from the coventurers. *Yonofsky,* 362 F.Supp. at 1031 ("[E]ach of the coadventurers must make some contribution to the joint undertaking. There must be some combination of property, financial resources, effort, skill or knowledge."). Curry has alleged MTVN contributions of various sorts, including advertising of the mtv.com address on MTVN broadcasts and permission (or at least a request by Stillerman) to place certain MTVN materials on Curry's Internet site.

As New York General Obligations Law § 5–701 presents no bar to this cause of action, Defendant's breach of contract counterclaim survives Plaintiff's motion to dismiss.

## C. Fraud/Negligent Misrepresentation Counterclaim

Curry's second counterclaim is labeled "Fraud/Negligent Misrepresentation." Under Federal Rule of Civil Procedure 9(b), "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." A claim for fraud must be dismissed under Rule 12(b)(6) if it does not satisfy the Requirements of Rule 9(b). *See Decker v. Massey–Ferguson, Ltd.,* 681 F.2d 111, 113–15 (2d Cir.1982). MTVN argues for dismissal of the fraud claim on the ground that Curry has merely set forth conclusory allegations of fraud "without clearly stating who said what and when." (Pl.'s Mem. at 14.) The Court finds that the details of the Farber and Stillerman conversations are sufficiently set forth in paragraphs 9–11 of Curry's Answer and Counterclaims to meet the Rule 9(b) standard. *See Goldman v. Belden,* 754 F.2d 1059, 1070 (2d Cir.1985) (defendant charged with fraud only need be given notice of precisely what he is charged with).

MTVN next argues that Curry has failed to set forth a sufficient factual basis to establish fraudulent intent (scienter) when MTVN executives encouraged Curry to develop his computer service under the mtv.com name. While Rule 9(b) permits scienter to be demonstrated by inference, this "must not be mistaken for license to base claims of fraud on speculation and conclusory allegations." *Wexner v. First Manhattan Co.,* 902 F.2d 169, 172 (2d Cir.1990).

Curry's fraud claim requires that MTVN personnel had fraudulent intent at the time that they made the statements at issue. *Lanzi v. Brooks,* 54 A.D.2d 1057, 388 N.Y.S.2d 946, 948 (3d Dept.1976), *aff'd,* 43 N.Y.2d 778, 402 N.Y.S.2d 384, 373 N.E.2d 278 (1977). MTVN argues that Curry's pleadings are deficient in this regard, as there is no suggestion that Farber or Stillerman intended, at the time of the June and

August conversations, to break the promises they allegedly made.

The Court finds Curry's pleadings sufficient in this regard. Curry's August conversation with Stillerman was critical to his reliance and resulting damages. (Countercl. ¶¶ 27–30.) Curry alleges that "during the second half of 1993, MTVN and Viacom explored various options for development of interactive television or on-line computer services" (*Id.* ¶ 17), resulting in an agreement with America On–Line to provide a computer link to MTVN (Countercl. ¶ 19). Since the "second half of 1993" encompasses August, 1993, the Court only need infer that Stillerman, a "senior executive" at MTVN, would be aware of MTVN's plans to develop a computer-based information service to find a sufficient basis for scienter in Curry's pleadings.

MTVN also argues that Curry fails to plead another required element for his fraud claim, reasonable reliance on the purported oral agreement. The essence of this argument is that Curry, whose previous written employment contracts denied him rights to MTVN's intellectual property, should have known that MTVN would not orally grant him such rights in conjunction with his fledgling service.

Questions of the reasonableness of reliance raise issues of fact that must be resolved at trial. *Whitbread Holdings, Inc. v. Baron Philippe de Rothschild, S.A.*, 630 F.Supp. 972, 978 (S.D.N.Y.1986). The Court notes only that Curry's pleadings allege a period of services rendered to MTVN, from May, 1992 through April, 1994, that were not based upon a written contract. This oral employment contract may have set the stage for the oral agreement that Curry now asserts. The Court also takes judicial notice of the explosive growth in public and corporate awareness of the commercial potential of the Internet. What seems an unlikely grant of intellectual property rights in the summer of 1994, might have seemed far less valuable to a broadcast media entity such as MTVN even one year ago.

The Court therefore finds that Curry's fraud allegations are sufficient to withstand this motion to dismiss. The Court is similarly unpersuaded by the similar arguments that MTVN raises in opposition to Curry's negligent misrepresentation counterclaim.

### D. Unfair Competition Claim

■ Curry's third counterclaim alleges the New York common law tort of unfair competition, which "bans 'any form of commercial immorality.' A cause of action for unfair competition requires unfairness and an unjustifiable attempt to profit from another's expenditure of time, labor and talent." *Coors Brewing Co. v. Anheuser–Busch Cos.*, 802 F.Supp. 965, 975 (S.D.N.Y.1992) (citations omitted). This claim is grounded in Curry's theory that MTVN was using his Internet site as a no risk "test bed" for its own on-line service.

MTVN argues that it cannot determine how to interpret Curry's third counterclaim, which in paragraph 33 of his Answer and Counterclaims charges MTVN with "misappropriat[ing] the fruits of Curry's labors and expenditures." The Court agrees that Curry has failed to specify what it is that MTVN has allegedly misappropriated.

Unfair competition is an imprecisely defined cause of action in New York. There appear to be "few limits on this evolving tort." *Demetriades v. Kaufmann*, 698 F.Supp. 521, 525 (S.D.N.Y.1988). "[I]ts confines are marked only by the 'conscience, justice and equity of common-law judges.'" *Id.* (quoting *Metropolitan Opera Ass'n, Inc. v. Wagner–Nichols Recorder Corp.*, 199 Misc. 786, 101 N.Y.S.2d 483, 488 (Sup.Ct.1950), *aff'd*, 279 A.D. 632, 107 N.Y.S.2d 795 (1st Dept.1951)).

Rule 12(e) of the Federal Rules of Civil Procedure states in part:

> If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement. . . .

There is a tension between Rule 12(e) and Fed.R.Civ.P. 8, which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." While motions for more definite pleadings are general-

ly disfavored, the opposing party must be given sufficient notice to frame a responsive pleading. *Bower v. Weisman,* 639 F.Supp. 532, 538 (S.D.N.Y.1986).

Applying this standard to the amorphous tort of unfair competition, the Court concludes that MTVN is entitled to clarification of Curry's third counterclaim. In particular, MTVN deserves amplification of the phrase in paragraph 33 that charges MTVN with misappropriation of "the fruits of Curry's labors and expenditures." These fruits might involve trademark issues, such as the use of the Internet address "mtv.com," or theft of Curry's idea, or perhaps theft of Curry's mtv.com audience. Given the broad range of defenses involved in opposing these claims, and the potential for unexpected claims at trial, MTVN is entitled to a clarification of Curry's pleadings. Recognizing that MTVN has not been provided with fair notice of Curry's third counterclaim, the Court grants MTVN's motion for a more definite statement.

### III. Conclusion

For the foregoing reasons, Plaintiff's motion with regard to counterclaims I and II is denied. As to counterclaim III, Plaintiff's motion for a more definite statement is granted. Defendant shall have thirty (30) days from the date of this Order to file an amended third counterclaim. Plaintiff shall have thirty (30) days from the date of the filing of the amended counterclaim in which to file an answer or other appropriate response to the amended counterclaim.