BENSUSAN RESTAURANT
CORPORATION,
Plaintiff,

v.

Richard B. KING, individually and d/b/a
The Blue Note, Defendant.

No. 96 Civ. 3992 (SHS).

United States District Court,
S.D. New York.

Sept. 9, 1996.

---

Dorothy M. Weber, Shukat, Arrow Hafert & Weber, L.L.P., New York City, for plaintiff.

Robert A. Bourque, Simpson Thacher & Bartlett, New York City, for defendant.

## OPINION AND ORDER

STEIN, District Judge.

Plaintiff Bensusan Restaurant Corp. ("Bensusan") brought this action against defendant Richard King, individually and doing business as The Blue Note, alleging that King is infringing on Bensusan's rights in its trademark "The Blue Note." King has moved to dismiss the complaint for lack of personal jurisdiction pursuant to Fed. R.Civ.P. 12(b)(2). The issue raised by that motion is whether the existence of a "site" on the World Wide Web of the Internet, without anything more, is sufficient to vest this Court with personal jurisdiction over defendant pursuant to New York's long-arm statute and the Due Process Clause of the United States Constitution. For the reasons that follow,

the motion to dismiss the complaint is granted.

## I. BACKGROUND

Bensusan, a New York corporation, is the creator of a jazz club in New York City known as "The Blue Note." It also operates other jazz clubs around the world. Bensusan owns all rights, title and interest in and to the federally registered mark "The Blue Note." (Complaint, ¶¶ 1, 5.) King is an individual who lives in Columbia, Missouri and he owns and operates a "small club" in that city which is also called "The Blue Note." (Complaint, ¶¶ 2, 6.)

In April of 1996, King posted a "site" on the World Wide Web of the Internet to promote his club.[1] This Web site, which is located on a computer server in Missouri, allegedly contains "a fanciful logo which is substantially similar to the logo utilized by [Bensusan]." (Complaint, ¶ 11.) The Web site is a general access site, which means that it requires no authentication or access code for entry, and is accessible to anyone around the world who has access to the Internet. (Meltzer Aff., ¶ 2.) It contains general information about the club in Missouri as well as a calendar of events and ticketing information. (Id., ¶¶ 2–3; Exhs. A & B.) The ticketing information includes the names and addresses of ticket outlets in Columbia and a telephone number for charge-by-phone ticket orders, which are available for pick-up on the night of the show at the Blue Note box office in Columbia. (Id., Exh. B.)

At the time this action was brought, the first page of the Web site contained the following disclaimer: "The Blue Note's Cyberspot should not be confused with one of the world's finest jazz club[s] [the] Blue

1. In *MTV Networks v. Curry*, 867 F.Supp. 202 (S.D.N.Y.1994), Judge McKenna of this court described the Internet as follows:

The Internet is the world's largest computer network (a network consisting of two or more computers linked together to share electronic mail and files). The Internet is actually a network of thousands of independent networks, containing several million "host" computers that provide information services. An estimated 25 million individuals have some form of Internet access, and this audience is doubling each year. The Internet is a cooperative venture, owned by no one, but regulated by several volunteer agencies.

*Id.* at 203 n. 1 (citations omitted). A "site" is an Internet address which permits users to exchange digital information with a particular host, *see id.* at 203 n. 2, and the World Wide Web refers to the collection of sites available on the Internet, *see Shea v. Reno*, 930 F.Supp. 916, 929 (1996). *See also Malarkey–Taylor Assocs., Inc. v. Cellular Telecommunications Indus. Ass'n*, 929 F.Supp. 473, 476 n. 1 (D.D.C.1996) (citing *American Civil Liberties Union v. Reno*, 929 F.Supp. 824 (E.D.Pa.1996)); *Religious Technology Ctr. v. Netcom On–Line Communication Servs., Inc.*, 923 F.Supp. 1231, 1238 n. 1 (1995).

Note, located in the heart of New York's Greenwich Village. If you should find yourself in the big apple give them a visit." (Complaint, ¶ 9.) Furthermore, the reference to Bensusan's club in the disclaimer contained a "hyperlink"[2] which permits Internet users to connect directly to Bensusan's Web site by "clicking" on the link. (*Id.* at ¶ 10.) After Bensusan objected to the Web site, King dropped the sentence "If you should find yourself in the big apple give them a visit" from the disclaimer and removed the hyperlink. (King Aff., ¶ 14.)

Bensusan brought this action asserting claims for trademark infringement, trademark dilution and unfair competition. King has now moved to dismiss the action for lack of personal jurisdiction pursuant to Fed. R.Civ.P. 12(b)(2).

## II. *DISCUSSION*

■ At this stage of the litigation—prior to an evidentiary hearing or discovery—Bensusan may defeat a motion to dismiss the complaint for lack of personal jurisdiction by making merely a *prima facie* showing of jurisdiction. *See A.I. Trade Finance, Inc. v. Petra Bank,* 989 F.2d 76, 79–80 (2d Cir.1993); *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.,* 763 F.2d 55, 57 (2d Cir.1985); *Rothschild v. Paramount Distillers, Inc.,* 923 F.Supp. 433, 435 (S.D.N.Y.1996); *PI, Inc. v. Quality Prods., Inc.,* 907 F.Supp. 752, 758 (S.D.N.Y. 1995); *Dave Guardala Mouthpieces, Inc. v. Sugal Mouthpieces, Inc.,* 779 F.Supp. 335, 336–37 (S.D.N.Y.1991).

■ In that regard, Bensusan is entitled to have its complaint and affidavits interpreted, and any doubts resolved, in the light most favorable to it. *See Landoil Resources Corp. v. Alexander & Alexander Servs., Inc.,* 918 F.2d 1039, 1043 (2d Cir.1991); *Hoffritz for Cutlery,* 763 F.2d at 57; *Linzer v. EMI Blackwood Music, Inc.,* 904 F.Supp. 207, 211 (S.D.N.Y.1995); *Editorial Musical Latino Americana, S.A. v. Mar Int'l Records, Inc.,* 829 F.Supp. 62, 64 (S.D.N.Y.1993). This burden is satisfied even when the moving party

makes contrary allegations that place in dispute the factual basis of plaintiff's *prima facie* case. *See A.I. Trade Finance,* 989 F.2d at 79–80; *Marine Midland Bank, N.A. v. Miller,* 664 F.2d 899, 904 (2d Cir.1981); *Lancaster v. Zufle,* 165 F.R.D. 38, 40 (S.D.N.Y. 1996); *National Cathode Corp. v. Mexus Co.,* 855 F.Supp. 644, 646 (S.D.N.Y.1994).

■ Furthermore, where, as in this case, discovery has not commenced on this issue or any other, plaintiff is entitled to rely on mere factual allegations to make its *prima facie* showing of jurisdiction. *See Ball v. Metallurgie Hoboken–Overpelt, S.A.,* 902 F.2d 194, 197 (2d Cir.), *cert. denied,* 498 U.S. 854, 111 S.Ct. 150, 112 L.Ed.2d 116 (1990); *Rothschild,* 923 F.Supp. at 436; *Executive Telecard, Ltd. v. Engelman,* No. 95 Civ. 9505, 1996 WL 191967, at *2 (S.D.N.Y. Apr. 19, 1996); *Pilates, Inc. v. Pilates Inst., Inc.,* 891 F.Supp. 175, 177 (S.D.N.Y.1995); *Palmieri v. Estefan,* 793 F.Supp. 1182, 1186 (S.D.N.Y. 1992); *Kinetic Instruments, Inc. v. Lares,* 802 F.Supp. 976, 981 (S.D.N.Y.1992). Matters outside the pleadings, however, may also be considered in resolving a motion to dismiss for lack of personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2) without converting it into one for summary judgment. *See Visual Sciences, Inc. v. Integrated Communications, Inc.,* 660 F.2d 56, 58 (2d Cir.1981); *Rothschild,* 923 F.Supp. at 436; *John Hancock Property and Casualty Ins. Co. v. Universale Reinsurance Co., Ltd.,* No. 91 Civ. 3644, 1992 WL 26765, at *6 (S.D.N.Y. Feb. 5, 1992).

Knowing that personal jurisdiction over a defendant is measured by the law of the jurisdiction in which the federal court sits, *see Rothschild,* 923 F.Supp. at 436 (citing *Pilates,* 891 F.Supp. at 179), *Editorial Musical Latino Americana,* 829 F.Supp. at 64, Bensusan relies on subdivisions (a)(2) and (a)(3)(ii) of N.Y.C.P.L.R. § 302, New York's long-arm statute, to support its position that personal jurisdiction exists over King in this action. Each provision will be addressed in turn.

---

**2.** A "hyperlink" is "highlighted text or images that, when selected by the user, permit him to view another, related Web document." *Shea,* 930 F.Supp. at 929. With these links "a user can move seamlessly between documents, regardless of their location; when a user viewing the document located on one server selects a link to a document located elsewhere, the browser will automatically contact the second server and display the document." *Id.*

## A. *C.P.L.R. § 302(A)(2)*

C.P.L.R. § 302(a)(2) permits a court to exercise personal jurisdiction over any non-domiciliary who "commits a tortious act within the state" as long as the cause of action asserted arises from the tortious act. *See Pilates,* 891 F.Supp. at 180; *Exovir, Inc. v. Mandel,* No. 94 Civ. 3546, 1995 WL 413256, at *6 (S.D.N.Y. July 12, 1995); *Dave Guardala Mouthpieces,* 779 F.Supp. at 337; *Business Trends Analysts v. Freedonia Group, Inc.,* 650 F.Supp. 1452, 1456 (S.D.N.Y.1987).

In *Vanity Fair Mills, Inc. v. T. Eaton Co.,* 234 F.2d 633, 639 (2d Cir.), *cert. denied,* 352 U.S. 871, 77 S.Ct. 96, 1 L.Ed.2d 76 (1956), the United States Court of Appeals for the Second Circuit held that trademark infringement occurs "where the passing off occurs, *i.e.,* where the deceived customer buys the defendant's product in the belief that he is buying the plaintiff's." Under this standard, courts have found that an offering for sale of even one copy of an infringing product in New York, even if no sale results, is sufficient to vest a court with jurisdiction over the alleged infringer. *See Editorial Musical Latino Americana,* 829 F.Supp. at 64–65; *German Educational Television Network, Ltd. v. Oregon Public Broadcasting Co.,* 569 F.Supp. 1529 (S.D.N.Y.1983); *Hertz Sys., Inc. v. Hervis Corp.,* 549 F.Supp. 796, 797–98 (S.D.N.Y.1982); *Honda Assocs., Inc. v. Nozawa Trading Inc.,* 374 F.Supp. 886 (S.D.N.Y.1974). Accordingly, the issue that arises in this action is whether the creation of a Web site, which exists either in Missouri or in cyberspace—*i.e.,* anywhere the Internet exists—with a telephone number to order the allegedly infringing product, is an offer to sell the product in New York.

Even after construing all allegations in the light most favorable to Bensusan, its allegations are insufficient to support a finding of long-arm jurisdiction over plaintiff. A New York resident with Internet access and either knowledge of King's Web site location or a "search engine" capable of finding it could gain access to the Web site and view information concerning the Blue Note in Missouri.

It takes several affirmative steps by the New York resident, however, to obtain access to the Web site and utilize the information there. First, the New York resident has to access the Web site using his or her computer hardware and software. *See Shea,* 930 F.Supp. at 930. Then, if the user wished to attend a show in defendant's club, he or she would have to telephone the box office in Missouri and reserve tickets. Finally, that user would need to pick up the tickets in Missouri because King does not mail or otherwise transmit tickets to the user. Even assuming that the user was confused about the relationship of the Missouri club to the one in New York, such an act of infringement would have occurred in Missouri, not New York. The mere fact that a person can gain information on the allegedly infringing product is not the equivalent of a person advertising, promoting, selling or otherwise making an effort to target its product in New York. *See Hertz,* 549 F.Supp. at 797. Here, there is simply no allegation or proof that any infringing goods were shipped into New York or that any other infringing activity was directed at New York or caused by King to occur here. *Cf. People v. Concert Connection, Ltd.,* 211 A.D.2d 310, 314, 629 N.Y.S.2d 254, 257 (2d Dep't.1995), *appeal dismissed,* 86 N.Y.2d 837, 634 N.Y.S.2d 445, 658 N.E.2d 223 (1995) (Table).

Accordingly, C.P.L.R. § 302(a)(2) does not authorize this Court to exercise jurisdiction over King.

## B. *C.P.L.R. § 302(a)(3)(ii)*

Bensusan also contends that personal jurisdiction is established pursuant to C.P.L.R. § 302(a)(3)(ii), which permits a court to exercise personal jurisdiction over any non-domiciliary for tortious acts committed outside the state that cause injury in the state if the non-domiciliary "expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce." *See American Eutectic Welding Alloys Sales Co. v. Dytron Alloys Corp.,* 439 F.2d 428, 432–35 (2d Cir.1971); *In re Houbigant Inc.,* 914 F.Supp. 964, 979 (S.D.N.Y.1995); *Time Prods., Plc. v. J. Tiras Classic Handbags, Inc.,* No. 93 Civ. 7856, 1994 WL 363930, at *7 (S.D.N.Y. July 13,

1994); *Car–Freshner Corp. v. Broadway Mfg. Co.,* 337 F.Supp. 618, 619 (S.D.N.Y. 1971); *see also Sybron Corp. v. Wetzel,* 46 N.Y.2d 197, 204–05, 413 N.Y.S.2d 127, 130–31, 385 N.E.2d 1055, 1057–59 (1978).

As an initial matter, Bensusan does not allege that King derives substantial revenue from interstate or international commerce. Instead, it relies on arguments that King participates in interstate commerce by hiring and showcasing bands of national stature. Section 302(a)(3)(ii), however, explicitly states that substantial "revenue" is required from interstate commerce, not mere participation in it. King has submitted an affidavit stating that 99% of his patronage and revenue is derived from local residents of Columbia, Missouri (primarily students from the University of Missouri) and that most of the few out-of-state customers have either an existing or a prior connection to the area, such as graduates of the University of Missouri. (King Decl. ¶¶ 4, 8.)

Moreover, Bensusan's allegations of foreseeability, which are based solely on the fact that King knew that Bensusan's club is located in New York, is insufficient to satisfy the requirement that a defendant "expects or should reasonably expect the act to have consequences in the state." That prong of the statute requires that a defendant make "a discernable effort ... to serve, directly or indirectly, a market in the forum state." *Darienzo v. Wise Shoe Stores, Inc.,* 74 A.D.2d 342, 346, 427 N.Y.S.2d 831, 834 (2d Dep't.1980).

Finally, Bensusan's conclusory allegation of a loss in New York is nothing more that an allegation of an "indirect financial loss resulting from the fact that the injured person resides or is domiciled in New York," which is not the allegation of a "significant economic injury" required by section 302(a)(3). *See ICC Primex Plastics Corp. v. LA/ES Laminati Estrusi Termoplastici S.P.A.,* 775 F.Supp. 650, 656 (S.D.N.Y.1991); *Arbitron Co. v. E.W. Scripps, Inc.,* 559 F.Supp. 400, 404 (S.D.N.Y.1983); *Fantis Foods, Inc. v. Standard Importing Co.,* 49 N.Y.2d 317, 326–27, 425 N.Y.S.2d 783, 787, 402 N.E.2d 122, 125 (1980); *Sybron,* 46 N.Y.2d at 205, 413 N.Y.S.2d at 131, 385 N.E.2d at 1058.

Accordingly, C.P.L.R. § 302(a)(3) does not authorize this Court to exercise jurisdiction over King.

■ Bensusan's primary argument in support of both statutory bases for personal jurisdiction is that, because defendant's Web site is accessible in New York, defendant could have foreseen that the site was able to be viewed in New York and taken steps to restrict access to his site only to users in a certain geographic region, presumably Missouri. Regardless of the technical feasibility of such a procedure, *see Shea,* 930 F.Supp. at 929–30, 933–34, mere foreseeability of an in-state consequence and a failure to avert that consequence is not sufficient to establish personal jurisdiction. *See Fox v. Boucher,* 794 F.2d 34, 37 (2d Cir.1986); *Taurus Int'l Inc. v. Titan Wheel Int'l Inc.,* 892 F.Supp. 79, 82 (S.D.N.Y.1995).

### C. *Due Process*

■ Furthermore, even if jurisdiction were proper under New York's long arm statute, asserting personal jurisdiction over King in this forum would violate the Due Process Clause of the United States Constitution. *See, e.g., Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475–76, 105 S.Ct. 2174, 2183–84, 85 L.Ed.2d 528 (1985); *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980); *see also* Richard S. Zembek, Comment, *Jurisdiction and the Internet: Fundamental Fairness in the Networked World of Cyperspace,* 6 Alb.L.J.Sci. & Tech. 339, 367–80 (1996). Due process requires "that the non-resident defendant has purposefully established 'minimum contact' with the forum state such that the 'maintenance of the suit does not offend "traditional notions of fair play and substantial justice." ' " *Darby v. Compagnie Nationale Air France,* 769 F.Supp. 1255, 1262 (S.D.N.Y.1991) (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)).

The following factors are relevant to this determination: "(1) whether the defendant purposefully availed himself of the benefits of the forum state; (2) whether the defendant's conduct and connection with the forum state

are such that he should reasonably anticipate being haled into court there; and (3) whether the defendant carries on a continuous and systematic part of its general business within the forum state." *Independent Nat'l Distributors, Inc. v. Black Rain Communications, Inc.*, No. 94 Civ. 8464, 1995 WL 571449, at *5–6 (S.D.N.Y. Sept. 28, 1995).

As set forth above, King has done nothing to purposefully avail himself of the benefits of New York. King, like numerous others, simply created a Web site and permitted anyone who could find it to access it. Creating a site, like placing a product into the stream of commerce, may be felt nationwide—or even worldwide—but, without more, it is not an act purposefully directed toward the forum state. *See Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 112, 107 S.Ct. 1026, 1032, 94 L.Ed.2d 92 (1992) (plurality opinion). There are no allegations that King actively sought to encourage New Yorkers to access his site, or that he conducted any business—let alone a continuous and systematic part of its business—in New York. There is in fact no suggestion that King has any presence of any kind in New York other than the Web site that can be accessed worldwide. Bensusan's argument that King should have foreseen that users could access the site in New York and be confused as to the relationship of the two Blue Note clubs is insufficient to satisfy due process. *See Fox*, 794 F.2d at 37; *Beckett v. Prudential Ins. Co. of Am.*, 893 F.Supp. 234, 239 (S.D.N.Y.1995).

Although *CompuServe Inc. v. Patterson*, 89 F.3d 1257 (6th Cir.1996), a recent decision of the United States Court of Appeals for the Sixth Circuit, reached a different result, it was based on vastly different facts. In that case, the Sixth Circuit found personal jurisdiction proper in Ohio over an Internet user from Texas who subscribed to a network service based in Ohio. The user, however, specifically targeted Ohio by subscribing to the service and entering into a separate agreement with the service to sell his software over the Internet. Furthermore, he advertised his software through the service and repeatedly sent his software to the service in Ohio. *Id.* at 1264–65. This led that court to conclude that the Internet user "reached out" from Texas to Ohio and "originated and maintained" contacts with Ohio. *Id.* at 1266.[3] This action, on the other hand, contains no allegations that King in any way directed any contact to, or had any contact with, New York or intended to avail itself of any of New York's benefits.

Accordingly, the exercise of personal jurisdiction over King in this case would violate the protections of the Due Process Clause.

### III. CONCLUSION

For the reasons set forth above, defendant's motion to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(2) for lack of personal jurisdiction is granted and the complaint is dismissed.

SO ORDERED.

---

3. In *CompuServe*, the Sixth Circuit explicitly wrote that it was not addressing the issue of whether the Internet user "would be subject to suit in any state where his software was purchased or used ..." *CompuServe*, 89 F.3d at 1268.