**JERI–JO KNITWEAR, INC. and JJK II, INC., Plaintiffs,**

v.

**CLUB ITALIA, INC. and SIXTY S.P.A., Defendants.**

**No. 98 CV 4270 RO.**

United States District Court, S.D. New York.

April 17, 2000.

Cooper & Dunham LLP, Norman H. Zivin, New York City, for Plaintiff.

Carter, Ledyard & Milburn, William H. Sloane, H. Thomas Davis, Jr., New York City, for Defendant.

## MEMORANDUM AND ORDER

OWEN, District Judge.

Jeri–Jo requests this Court issue a contempt citation against the defendants for violating the Court's orders. On July 15, 1999, this Court granted Jerri–Jo's motion for summary judgment on its Lanham Act claims. The order specifically states, "Plaintiffs are entitled to injunctive relief based on my finding that defendant's have infringed plaintiffs' ENERGIE trademark." A judgment on consent was entered by the Court on December 3, 1999. That judgment permanently enjoined defendants, in the United States, from "advertising or promoting" apparel bearing Jerri–Jo's registered trademark ENERGIE or any colorable variation thereof or any confusingly similar trademark.

Defendants, Sixty S.p.A. ("Sixty") and Sixty U.S.A. (formerly known as Club Italia, Inc.), design, manufacture, sell, and distribute high price denim apparel under several labels, including the "ENERGIE" clothing label at issue in this case. All the clothing is designed in Italy and is sold worldwide. Sixty is the holder of valid trademarks for the ENERGIE mark in Italy, France, and Germany and has the right to sell ENERGIE apparel in numerous other countries, including Albania, Algeria, Armenia, Austria, Belgium, Bulgaria, Canada, China, Denmark, Finland, Ireland, Hong Kong, Israel, the Netherlands, North Korea, Portugal, Spain and the United Kingdom, among others.

Defendants are presently operating three Web sites at issue here, *www.misssixty.com*, *www.sixty.net*, and *www.energie.it*. Although the servers for all three sites are located in Italy, defendants had used a United States-based company to register its *www.misssixty.com* and *www.sixty.net* sites [1] one year before the

---

1. The end portion of a domain name, for example ".com," is called the top level domain. Internet addresses that end in ".com," ".net," ".org," and ".edu" are administered by a United States company, Network Solutions, Inc.

consent judgment was entered for a substantial number of products (which are legitimately sold even today in the United States) including the ENERGIE line. The third site, *www.energie.it,* is registered in Italy [2] and permits the user to view defendants' 1999/2000 collection of ENERGIE apparel. The first two sites, *www.misssixty.com* and *www.sixty.net,* contain a hyperlink to defendants' ENERGIE apparel, but do not themselves display defendants' infringing apparel. A hyperlink is highlighted text or images that when selected by the user, permits him to view another related Web document. With regard to these two sites, the highlighted text that constitutes the hyperlink is the term "ENERGIE," and by selecting this linking term, the user is transported to defendants' *www.energie.it* Web site to view defendants' 1999/2000 collection of ENERGIE apparel.

■ Plaintiffs contend that this constitute "advertisement [and] promotion" within the United States, putting defendants in contempt of the consent judgment. A Court has the power to hold a party in contempt where there is (1) a clear and unambiguous order, (2) clear and convincing proof of a party's non-compliance with that order, and (3) a failure to reasonably and diligently comply with the order. *New York State Nat'l Org. for Women v. Terry,* 886 F.2d 1339, 1351 (2d Cir.1989), *cert. denied,* 495 U.S. 947, 110 S.Ct. 2206, 109 L.Ed.2d 532 (1990).

With the foregoing as the law, plaintiffs argue that the Court's order clearly prohibits all advertisement and promotion of defendants' ENERGIE apparel in the United States. Plaintiffs contend defendants are in violation of the order because they continue to use *www.misssixty.com* and *www.sixty.net* sites to advertise and promote their entire line which includes the infringing ENERGIE apparel to United States consumers, and have not been reasonably diligent in complying with the

Court's orders because they have taken no steps at all to restrict access or the likelihood of access to these sites by United States consumers for the ENERGIE line. Plaintiff assert defendants could have taken several steps to reduce the likelihood that a user in the United States would view their (U.S.) infringing ENERGIE collection. First, defendants could have changed the top level domain names from ".com" and ".net," which United States users are accustomed to using, to ".it," which United States users are unaccustomed to using. Second, defendant could have removed the hypertext links from the *www.misssixty.com* and *www.sixty.net* Web sites to the *www.energie.it* Web site, which displays defendants' infringing ENERGIE collection. Third, defendant could restrict access to their Italian Web site by requiring a password, which would not be issued to United States users. Thus, plaintiffs argue that defendants cannot assert that they have been reasonably and diligently complying with the Court's orders.

Plaintiffs cite *Playboy Enterprises, Inc. v. Chuckleberry Publishing, Inc.,* 939 F.Supp. 1032 (S.D.N.Y.1996) to support their position. In *Playboy,* the Court had issued an injunction in 1981 against the use by an Italian company, Tattilo, of the mark PLAYMEN in connection with selling, offering for sale or distribution of English-language magazines in the United States. However, Tattilo was not prevented from selling PLAYMEN magazines in Italy. Some years later, Playboy discovered that Tattilo had created an Internet site accessible by users from the United States which featured the PLAYMEN name, *www.playmen.it.* Since users from the United States could download pictures and arrange subscription agreements from the site, Playboy moved to hold Tattilo in contempt for violating the injunction by offering for sale and distributing PLAYMEN magazine in the United States. Finding

---

**2.** Addresses administered in other countries may have different top level domain names.

The ".it" indicates an Italian Web site.

Tattilo in contempt, the court ordered Tattilo to shut down the Web site or make it inaccessible to United States customers and awarded Playboy all of Tattilo's gross profits and its attorney's fees incurred in making the application. Plaintiffs argue that defendants' conduct here is no different from that described in *Playboy*. They argue that defendants are flouting the Court's orders by continuing to offer information about the infringing ENERGIE apparel, i.e. promoting or advertising, through its Internet Web site which is accessible by United States consumers.

Defendants argue that the elements of contempt have not been satisfied. First, defendants argue that the Court's order is not "clear and unambiguous" since it does not expressly prohibit the operation of Sixty's internationally accessible Web sites. Second, defendants contend that they are in compliance with the consent judgment and that a Web site owner does not advertise or promote products simply by posting a Web site. In support of this second contention defendants cite *Bensusan Restaurant Corp. v. King,* 937 F.Supp. 295, 299 (S.D.N.Y.1996), *aff'd,* 126 F.3d 25 (2d Cir.1997). Third, defendants argue that they have diligently complied the Court's orders because they investigated whether United States consumers could be blocked from their Web sites but found it was not possible to do so "conclusively." After so finding, defendants proposed to add a disclaimer to their sites indicating that the ENERGIE brand clothing from Sixty as presented on the Web sites is not available for sale or distribution in the United States and is not available for purchase by persons in the United States, and that plaintiffs' own the ENERGIE trademark in the United States and sell and distribute their own ENERGIE brand clothing in the United States. However, plaintiffs rejected this proposal.

While I agree with the plaintiffs that *Chuckleberry* provides guidance, and that defendant could be viewed as "advertising" in the United States in violation of the consent judgment, I can not, however, conclude on the total record before me that defendants' conduct is of that flouting wilfulness to have earned the denomination "contemnor." Defendants, one must keep in mind, *do* have world-wide rights in the mark outside the United States. Accordingly, while I direct the defendants to immediately de-link its *www.energie.it* site from its *www.misssixty.com* and *www.sixty.net* sites, I do not conclude defendants should be required to delist its *www.energie.it* site from various search engines because I do not believe an adequate evidentiary foundation has been laid to require such broad relief where even plaintiff concedes 100% perfection is not possible, and, I repeat, defendants may legitimately advertise their mark over much of the rest of the globe, and there is no showing of damage to plaintiff from the failure to act with more dispatch. Plaintiffs did observe at oral argument that perfection is not possible, the Internet being what it is. (Tr. at 8).

Plaintiffs seek a forfeiture of defendants gross profits, and plaintiffs' attorney's fees for the making of the motion. *New York State Nat'l Org. for Women v. Terry,* 886 F.2d 1339, 1352 (2d Cir.1989), *cert. denied,* 495 U.S. 947, 110 S.Ct. 2206, 109 L.Ed.2d 532 (1990). It appears that defendants stopped selling the infringing product in the United States after the injunction was granted, and plaintiffs make no showing of actual damage. I decline to pursue this area. I do, however, grant plaintiffs request for its attorneys' fees incurred in making this enforcement application. Plaintiffs are to submit documentation to support its claim. If agreement cannot be reached, I will schedule a hearing.

The foregoing is so ordered.