**ROBERT HALF, INC., Plaintiff,**

v.

**ROMAC INTERNATIONAL, INC., Defendant.**

No. 98 CIV. 8717(RO).

United States District Court, S.D. New York.

June 16, 2000.

Gary B. Glaser, Andrew B. Lachow, Seyfarth, Shaw, Fairweather & Geraldson, New York City, for Plaintiff.

Edward G. Williams, Holland & Knight, LLP, New York City, for Defendant.

## OPINION AND ORDER

OWEN, District Judge.

Plaintiff Robert Half, Inc. seeks a finding of contempt and damages against defendant Romac International, Inc. (now doing business as "kforce.com") for a violation of a Final Consent Judgment dated March 12, 1999 (the "March Judgment") and a Consent Order dated July 20, 1999 (the "July Order"). A division of Robert Half, ACCOUNTEMPS, and Romac both specialize in placing accounting and finance professionals on a temporary basis. Plaintiff has over 200 offices in the United States, and defendant has ninety-five offices in the United States and one in Canada.

Half commenced this action in December 1998, claiming defendant Romac infringed on its registered ACCOUNTEMPS trademark in violation of the Trademark Act of 1946, 15 U.S.C. § 1501, and New York common law by using the term "Account Temps" on its website. Plaintiff sought injunctive relief and an award of compensatory and punitive damages. The parties settled the case by entering into the March Judgment, which "permanently enjoined and restrained [Romac] from using the name or term ACCOUNTEMPS or 'Account Temps' or any other mark confusingly similar to plaintiff's registered trademark ACCOUN-

TEMPS or in connection with the advertising, promotion or rendering of any of defendant's services." In April 1999, a Romac Vice President Peter Dominici sent an e-mail to the company's employees instructing them not to use plaintiff's marks.

Within a few months, however, Romac registered the domain names ACCOUNTTEMPS.COM and ACCOUNTTEMPS.ORG. In June 1999, plaintiff moved for a contempt of the March Judgment, and the parties settled by entering into the July Order, which required Romac to pay $10,000 and to transfer the domain names to plaintiff. The July Order further provided "[i]n the event of any further material violation of [the March Judgment or the July Order], Plaintiff shall be entitled to liquidated damages in the amount of $10,000."

It appears that in November 1998, one Barbara Kaliney, a nurse, was hired by Romac and began working in its Columbus, Ohio Healthcare division. In June 1999, she was transferred to the Finance and Accounting Division of Romac's Columbus office as a marketing consultant, and in September 1999, she designed a mousepad with the phrase "Romac International formerly Accountant Source Temps" upon it to be given to less than 300 local clients as an explanation of Romac's acquisition of another company in the Columbus market called "Accountant Source Temps". However, the promotion company assisting her with design and production of the mousepads advised her that the phrase contained too many letters and words to fit on the mousepad. So, she states, unaware of this case or any restrictions flowing from it, the phrase was shortened to "Romac Account Temps". She ordered 250 of these mousepads. Two hundred sixty mousepads were delivered on or about October 21, 1999.

Plaintiff's then counsel, Darby & Darby, learned of the offending mousepad in March of this year (2000) and filed a motion for contempt on April 3, 2000, asking for $10,000 in liquidated damages pursuant to the July Order, reasonable attorneys' fees, and other relief. Upon learning of this motion, Romac's CFO Ken W. Pierce sent every employee in the company an memorandum on April 10, 2000, summarizing the terms of the March Judgment and the July Order, and instructing them not to use Robert Half's mark or any similar marks in connection with marketing or business activities, and Romac's counsel immediately contacted Darby & Darby, embarrassedly acknowledging the violation and seeking to set the situation right and appropriately resolve it.[1] Ms. Kaliney was informed of her offense and endeavored to track down and retrieve the mousepads. Of the 260 originally received, she determined 158 remained at Romac's offices. Eighteen mousepads were retrieved from donees by Kaliney and two other staff members, and one recipient confirmed he had thrown the mousepad away. Thus, of the 260 delivered to Romac, eighty-three had either been lost by the donee or were discarded, and cannot be accounted for.

On April 24, 2000, however, new lawyers had entered the scene for the plaintiff, Seyfarth, Shaw, Fairweather & Geraldson. They filed an amended motion based upon the same conduct, but now demanded $10,000 for each "material violation", submitting that this meant "each publication and/or distribution", arguably $1,020,000 (eighty-three plus nineteen, multiplied by $10,000), together with new counsel's attorneys' fees.

 For a civil contempt, a court must find: (1) the order is clear and unambiguous; (2) the proof of non-compliance is clear and convincing; and (3) a failure to reasonably and diligently comply with the order. *New York State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1351 (2d Cir.1989). Here, Romac does not question the violation, but contends that it diligently

---

1. It its papers, Romac states that it stands ready to pay $10,000 in liquidated damages and the attorneys' fees incurred by Darby & Darby.

attempted in a reasonable manner to comply with the March Judgment and the July Order. It is not censurable that Romac's e-mail notification of this court's order did not reach a new employee—Ms. Kaliney—then a nurse in the health unit in the Columbus office. Accordingly, I find the conduct complained of—the inadvertent distribution of these mousepads by a lower level employee in one local office—is not such a willful flouting of the court's authority so as to warrant a finding of contempt. *See Jeri–Jo Knitwear, Inc. v. Club Italia, Inc.*, 94 F.Supp.2d 457, 459 (S.D.N.Y. 2000). I also decline to find that Kaliney's inadvertent action constituted more than one violation of the March Judgment. Romac is therefore ordered to pay plaintiff $10,000 as provided for in the liquidated damages clause of the July Order.

I deny plaintiff's request that this Court order Romac to recall and retrieve *all* of the mousepads, provide plaintiff with a list of all entities and individuals to whom the infringing mousepads were distributed and fully account for the present whereabouts of each and every mousepad. It appears that, since learning of the original motion, Romac has been reasonably tracking down and retrieving the mousepads in an attempt to account for all of them, and has done the best that can be expected.

Finally, I award plaintiff certain attorneys' fees and costs, but only those incurred by Darby & Darby in connection with its original motion filed on April 3, 2000. That filing caused Romac to immediately get in touch with Darby & Darby, to look into the situation, to circulate the April 10, 2000 memorandum, to begin tracking down and recovering the Kaliney mousepads, and to agree to remedy the matter with Darby & Darby. All this was before Seyfarth, Shaw's motion seeking a million dollars was filed on April 24, 2000. Seyfarth, Shaw had to know from Darby & Darby of what was underway by Romac

before it filed. I decline to award further fees.

In summary, plaintiff having suffered no apparent damages, Romac is ordered to pay plaintiff $10,000 in liquidated damages in accordance with the July Order,[2] and to pay the attorneys' fees and costs incurred by Darby & Darby in connection with the original motion filed on April 3, 2000. If the parties are unable to stipulate thereto, I will hold a hearing on July 28, 2000 at 3:00 p.m. in Courtroom 1106 of the United Stated States Courthouse, 40 Foley Square, New York City, to resolve this issue. All other relief sought by plaintiff is denied.

So ordered.

---

**2.** More would be inappropriate. *See Jordache Enter., Inc. v. Global Union Bank*, 688 F.Supp. 939, 943–44 (S.D.N.Y.1988).